BENNINGTON,<br>*February*,<br>1841.<br><br>Bank of Manchester<br>*v.*<br>Bartlett.

---

### BANK OF MANCHESTER *v.* DANIEL BARTLETT.

If the creditor do some positive and conscious act, which has a tendency to impair his claims against the principal debtor, it will operate to release a surety who did not consent to such act.

ASSUMPSIT, on a joint and several promissory note, given by Orange Green and the defendant to the plaintiffs.

Plea non assumpsit, and trial by the court.

BENNINGTON,
*February,*
1841.

Bank of Man-
chester
*v.*
Bartlett.

The action was tried at the June term of the county court, 1840.

On the trial the plaintiffs read in evidence the note declared upon.

The defendant then introduced testimony tending to prove that he signed said note as surety only ; that some day before said note became due, Orange Green died ; that, on the third day of June, A. D. 1839, administration was taken out on Green's estate, and the same represented insolvent ; that the probate court for the district of Rutland, which granted administration on said estate, appointed commissioners on said estate, and gave six months' time for the creditors of said estate to exhibit their claims before said commissioners ; that after said note became due the defendant informed the plaintiffs that he was surety on said note, and then and there requested said plaintiffs to present said note before said commissioners and have the same allowed against said estate, which the plaintiffs refused to do. Upon these facts the county court decided that the defendant was liable, and rendered a judgment against him ; to which decision the defendant excepted.

*D. Roberts, jr.*, for defendant.

The defendant contends that he is released from liability upon the note, either wholly, or at least to the amount that Green's estate would have paid.

The mere neglect to present the note against Green's estate would operate to discharge that estate from all claim. The debt, as against that estate, is discharged and extinguished. Comp. Stat. p. 353, sec. 91. *Hunt* v. *Fay, Administrator*, 7 Vt. R. 170.

Being extinguished as against the principal, it must be held extinguished as against the surety, *at least* to the amount which might have been collected of Green's estate, *especially* as the fact of the defendant's suretyship was made known to the plaintiff. *McCollum* v. *Hinckley*, 9 Vt. R. 143.

*Sed quœre*—whether the refusal of the plaintiff to present the note against Green's estate was not an *actual fraud* against the defendant, and so he is wholly released. *King* v. *Baldwin*, 17 Johns. 384.

But, whether the defendant was discharged, *in toto,* or only

in part, is immaterial here, since judgment was rendered for the full amount of the note.

And whether this notice was given before or after suit brought, is immaterial, for whatever operates as an extinguishment of the debt, as payment, &c., may be given in evidence, in assumpsit, though arising after suit brought.

*Sargeant & Miner*, for plaintiffs.

The only question presented by this case is, whether the defendant is discharged by the neglect of the plaintiffs to present their claim to the commissioners on the estate of Green.

It seems to be well settled that a known surety is not discharged by a mere delay to demand payment of the principal, after the debt becomes due, unaccompanied with fraud, or an express agreement with the principal to allow the delay. *Fulton* v. *Matthews et al.* 15 Johns. R. 433. *Powell* v. *Waters*, 17 do. 176. 3 Stark. Ev. 1390, note.

That kind of indulgence to a principal, which will discharge the surety, must be of such a nature as to change the contract, or, whereby the creditor, without consent of the surety, prevents the latter from enforcing payment of the principal, or whereby the creditor loses his lien upon the principal.

Nothing of that kind exists in this case. At the commencement of this suit, for aught that appears, the commissioners on the estate of Green had not set at all, and there was no act done by the plaintiffs, or duty neglected to have been done, which in any way hindered or prevented the defendant from obtaining satisfaction from the estate of the principal.

It was the duty of the defendant, if he was in fact surety, to have paid the note, and presented the claim before the commissioners. But if he saw fit to sleep upon his rights when there was a suit pending against him for the same matter, it certainly was no fault of the plaintiffs. Mere laches without fraud will not discharge a surety. 9 Wheat. R. 720. 5 U. S. Cond. R. 739.

The case does not show that the plaintiffs ever knew that the defendant was surety until long after this suit was commenced, and then was only told so by the defendant after one judgment in the case.

The plaintiffs had a good right of action at the commencement of the suit. Can that right be barred by a subsequent

Bennington,
*February,*
1841.

Bank of Man-
chester
*v.*
Bartlett.

request made by the defendant to the plaintiffs, or by the neg-lect of the plaintiffs to pursue some other mode of collecting his debt than the one he had a right to select and did select in the outset?

The case of *McCollum* v. *Hinckley*, in 9 Vt. R. is not like this case.

It does not appear from the case whether Green's estate was actually insolvent or not, and, if it was, how much the estate paid.

If the estate paid but ten cents on the dollar, it would be manifestly unjust for the plaintiffs to lose their whole claim, for their neglect to save the defendant ten dollars in the hundred.

A right of action existed when the suit was commenced. If the court should now find that the suit is barred, what is to be the rule of costs?

The opinion of the court was delivered by

Redfield J.—The present case brings in question a sub-ject upon which there has been first, and last, very much dis-cussion, and upon which the law of different countries has not been uniform. The civil law, founded as it was upon the most enlarged principles of abstract moral equity, extend-ed to sureties some further protection than what has yet been adopted, even in the English chancery. I have not the leis-ure nor requisite aids, at hand, to enable me fully to state all the provisions of the Roman civil law in favor of sureties. They will be found very lucidly discussed, and very intelligi-bly digested, by Chancellor Kent, in the case of *Hayes* v. *Ward and others*, 4 Johns. Ch. R. 123. It is obvious that, by the civil law, the creditor might be required to first ex-haust his remedies against the principal debtor, before calling upon the surety. The proceedings against the surety could, by a dilatory plea, be stayed until the suit against the principal debtor, which was carried forward at the expense of the sure-ty, was terminated. The same rule has been adopted in most of the countries of continental Europe, whose jurisprudence is based upon that of the civil law.

But, it is believed, no such general rule has yet obtained in the English chancery. It is certain that, in many cases, under special circumstances, this rule has been there enfor-

ced. *Wright* v. *Nutt*, 1 H. Black. 136. 3 Bro. 326. In every case where the creditor could not assign the benefit of the fund to the surety, he has been compelled to resort to it himself in the first instance. The same rule was adopted in the case of *Hayes* v. *Ward*, where the authorities are fully collated.

It is, too, a universal rule of English equity law, that the creditor holds all securities in trust for the ultimate benefit of the surety ; that upon the payment of the debt, the surety is entitled to be subrogated to all the rights of the principal, and that if, by any positive and wilful act, the creditor release, or render unavailing any of his securities against the principal debtor, to that extent he thereby relieves the surety. It was upon this ground that the case of *McCollum* v. *Hinckley*, 9 Vt R. 143, and the case of *Clark* v. *Hill*, there referred to, were decided by this court.

But we do not perceive that the present case shows any such *positive* and *wilful* interference by the plaintiffs in the matter, as will justify the court in saying that, at the time judgment was rendered in the court below, they had released the surety. It does not appear, by the case, at what time the plaintiffs were requested to present this claim before the commissioners on Green's estate, or whether in fact the commission had been closed at the time judgment was rendered against the defendant. If not, and we are not to presume any thing against the regularity of the proceedings of the court below, nothing had then occurred in the least tending to embarrass the matter. The surety might then proceed with the claim against the estate of Green, as well as the creditor. It is doubtless true, that the court of chancery would, at the instance of the surety, compel a creditor to take proceedings either against the principal debtor, or his estate, as has been frequently done in the English and New York chancery. *King* v. *Baldwin*, 2 Johns. Ch. R. 562, 3 Merrivale, 579, and the cases referred to. But it is not now necessary to consider that point.

Judgment affirmed.