ISAAC M. KIRKPATRICK

*v.*

RICHARD A. HOWK.

1. SURETIES—*property pledged by the principal debtor.* It is a well settled principle in equity, that a creditor who has the personal contract of his debtor, with a surety, and takes property from the principal as a pledge or security for his debt, should hold the property for the benefit of the surety as well as himself, and if he parts with it without the knowledge or against the will of the surety, he shall lose his claim against the surety to the amount of the property so surrendered. Property so taken by the creditor is taken and held in trust, not only for the creditor's security, but for the surety's indemnity. And these rules of equity are recognized and enforced in courts of law.

2. A party signed a note, as surety, with the principal, and delivered it to the principal, with authority to insert the name of a payee in a blank left in the note for that purpose. The principal borrowed of the plaintiff the amount of money the note called for, and inserted his name therein as payee, and delivered the note to him, and at the same time, as additional security for the money, delivered, in pledge, a colt worth $100. The colt was afterwards delivered up by the payee of the note to the principal: *Held*, in a suit brought on the note, against the surety, that the plaintiff could only recover the balance due on the note after deducting the value of the colt.

3. EVIDENCE — *proof of promises or declaration of a principal in suit against surety.* When a joint suit is brought against the principal and surety in a promissory note, but the surety alone is in court, and the principal testifies, as a witness, that the note has been paid, evidence as to any promise or declarations made by the principal after the time he testified the note was paid, is not competent against the surety, the principal, in such case, not being a party to the action.

4. Where one of the makers of a promissory note, who was not a party to an action brought on it, testified on behalf of another maker, who was a party, that the note had been paid, and no inquiry was made of him in relation to any promises or declarations made by him subsequent to the time of the alleged payment, so as to make evidence of such promises or declarations admissible for the purpose of impeaching his testimony, evidence in regard to such promises or declarations was properly excluded.

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Mr. JAMES H. STEWART, and Mr. JOHN J. GLENN, for the appellant.

Messrs. PORTER & MOSHIER, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court·

This was a suit commenced before a justice of the peace, by Howk, the appellee, against the appellant, Kirkpatrick, and Joseph M. Whitman, upon a promissory note, of which the following is a copy:

"$150.                         MONMOUTH, ILL., *April* 26, 1870.

Thirty days after date, I promise to pay to the order of R. A. Howk, Esq., one hundred fifty dollars, at ———. Value received.

J. M. WHITMAN,<br>I. M. KIRKPATRICK."

Whitman was not found and not served with process. Howk recovered before the justice against Kirkpatrick. The latter appealed to the circuit court, where a verdict and judgment were rendered against him for $189.39. From the latter judgment Kirkpatrick took this appeal.

It is assigned for error that the verdict is contrary to the evidence.

Whitman testified that the note in suit was given under the following circumstances: That he was owing the First National Bank of Monmouth a small balance of about $18 or $20, and went to the bank to get $150, with part of which to pay the bank what he was owing; that he offered for discount his own note for $150, with the name of Kirkpatrick on it as his security, but the bank would not accept Kirkpatrick as security, and refused to discount the note. No payee's name appeared in the note. That, shortly afterward, he and plaintiff, Howk. as his security, executed their note to the bank for $150, payable, he thought, thirty days after date; that he got the money from the bank on the note, except the small amount he was owing the bank, which it retained; that on the day the note was given

by himself and Howk, he filled up the note in suit with the name of R. A. Howk as payee, and then delivered it to Howk as his security for going security for him (Whitman) on their note to the bank; that on July 8, 1870, he paid $100 on the note of himself and Howk to the bank, and gave a new note for the balance, $50, payable in sixty days, with Howk as security. to the bank, which note he paid to the bank before it became due.

The president of the bank testified that on April 26, 1870, the bank had an account against Whitman of $18 and some cents. That account was settled and paid April 30, 1870. On the same date, April 30, 1870, an item first appeared in the drawer of the bank of $150, but he did not know what it was; that it was carried along as cash, but was not in fact cash; that very frequently a check or note for a short time, say thirty days or less, was carried, as this item was, as cash; that the $150 item disappeared on July 8, 1870, and on the same day a $50 note of J. M. Whitman and the plaintiff, Howk, appeared on the books; it was for sixty days, and was paid five days before due; that Whitman could not get money on his own account at the time. The cashier of the bank testifies to the same facts as the president, and testifies further, that he thinks the $150 item which was carried along as cash was a note, though he could not say positively; that he had some recollection that some note of Whitman was carried along by the bank with either Howk or Kirkpatrick as security.

Kirkpatrick testified that he signed the note in blank, as security; that the payee's name was not filled in; that he signed it to be used at the First National Bank.

The plaintiff, Howk, testified, in his own behalf, that he got the note in suit from Whitman, and gave him the money for it; that Whitman said he had been to the bank to get money on the note, but could not do it; that Whitman wanted him to go his security to the bank for $150, but he refused to do so. Whitman then wanted to know if he would take

this note in suit, and a colt witness was pasturing for him, as security for $150. That he (Howk) asked Whitman how the note came to be in blank as to the payee, and he said he expected to get the money at the bank; that he told Whitman he did not know that Kirkpatrick would like it; that Whitman went out, and soon came back, and remarked that Kirkpatrick said it was all right, and witness told him he would let him have the money, and did so.

The testimony of Whitman is corroborated by that of the president and cashier of the bank. Their testimony tends to produce the belief that the bank's account of $18 and some cents, against Whitman, which they say was settled and paid April 30, 1870, was so paid out of the money which Whitman testifies was obtained from the bank on his and Howk's note; that the $150 item, which on that date first appeared in the drawer of the bank, and was carried along as cash, though not in fact cash, was the note of Whitman and Howk for $150, given by them, as testified to by Whitman; and that the disappearance of this $150 item on July 8, 1870, was in consequence of Whitman, as he testifies, paying on that day $100 on the note, and giving a new note for the balance, $50, payable in sixty days, with Howk as security. This creates a preponderance of evidence in favor of the transaction in giving the note as testified to by Whitman; but whether or not it be so decided as to require that the finding of the jury should be set aside, the verdict, upon the plaintiff's own testimony was too large, and should have been set aside for that reason. His evidence was, that he took the note sued on and a colt of Whitman, which he was pasturing for the latter and then had in his possession, worth $100, as security for $150 which he let Whitman have, and that the colt was afterward delivered up to Whitman. He must have known, from the circumstances, that Kirkpatrick was only a surety on the note.

It seems to be a well settled principle in equity, that a creditor who has the personal contract of his debtor, with a surety, and takes property from the principal as a pledge or

security for his debt, should hold the property for the benefit of the surety as well as himself, and if he parts with it without the knowledge or against the will of the surety, he shall lose his claim against the surety to the amount of the property so surrendered. A surety who pays the debt is entitled to be put in the place of the creditor, and to all the means, and to every remedy which the creditor possesses to enforce payment from the principal debtor. Property so taken by the creditor is taken and held in trust, not only for the creditor's security, but for the surety's indemnity. And these rules of equity are recognized and enforced in courts of law. *Baker* v. *Briggs,* 8 Pick. 121; *Rogers* v. *School Trustees,* 46 Ill. 428; *Phares* v. *Barbour,* 49 id. 370; *The People* v. *Jansen,* 7 Johns. 332; *Neff's Appeal,* 9 Watts & Serg. 36; 2 Am. Lead. Cases, 5th ed. p. 403 *et seq.,* note to *Pain* v. *Packard,* and *King* v. *Baldwin.*

This property, then, instead of having been appropriated toward payment of the note, or held as an indemnity for the surety, having been delivered up to Whitman, the principal debtor, the value thereof should have been deducted from the note, and appellee have had judgment only for the remainder. The surety is presumed to have suffered loss by the surrender of the security. *Rogers* v. *School Trustees, supra,* 434.

There is an assignment of a cross-error by appellee, in the exclusion of a question to the witness Howk, whether Whitman did not make promises to him that he would pay the note, after the time Whitman testified the notes of himself and Howk had been paid. Although the name of Whitman was included with that of Kirkpatrick in the original summons on the commencement of the suit, Whitman was not served with process, nor did he appear in the suit. He was not a party to the action, and therefore his promises or declarations were not evidence against Kirkpatrick, though Whitman was a party to the contract. *Baker* v. *Briggs, supra.*

Whitman had not been inquired of as to the having made such promises, so as to make the question admissible for the purpose of impeaching his testimony.

The question was rightly excluded.

The judgment must be reversed and the cause remanded.

*Judgment reversed.*