ELLIS KAUFMAN

v.

EDGAR LOOMIS.

1. PLEDGE AS COLLATERAL SECURITY FOR DEBT—SURETY WHEN RELEASED.—A creditor holding a pledge as collateral security for a debt is not bound (except in cases of negotiable paper) to take any steps to realize on the security thus held, and is not chargeable with the loss or depreciation in value of the pledge, arising from mere omission of the creditor to act. But if a creditor has a surety for a debt and also holds a pledge of any kind for the same debt and he relinquishes or renders unavailable for the payment of the debt, the thing pledged, without the consent of the surety, the surety is discharged to the extent of the value of the pledge.

2. SECURITIES RENDERED UNAVAILING BY CREDITOR'S INTERFERENCE.
—Where appellee guaranteed the payment of certain promissory notes pay-

Kaufman v. Loomis.

able to the order of a certain bank and the principal assigned to B, in trust as collateral security for appellee and the bank, claims against two railroad companies for an alleged infringement of a patent, giving B power to sell said claims and releases in case of the principal's failure to pay the notes within six months, and the principal failed to pay, and no sale was made, and subsequently the railroad companies offered in settlement of the claims $11,000, and the surety and trustee were anxious to effect the settlement but the agent of the bank, the president, refused to consent, and by his refusal prevented the sale from being consummated, and shortly thereafter the patent was declared invalid by the U. S. Supreme Court, whereby the claims for damages against the railroad companies became valueless and the security was lost. *Held*, that the surety was released; that although the trustee might have sold, notwithstanding the refusal of the president of the bank to consent, yet if the trustee failed to do his duty to the injury of the surety, and the representative of the bank was the cause of such failure, the bank can not charge the loss to the surety.

APPEAL from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding. Opinion filed June 27, 1883.

Messrs. ROSENTHAL & PENCE, for appellant; that the pledgor having the general property in the pledge, might have sold it and compelled its restoration upon paying the money to redeem, but not offering to redeem, the bank can not be charged with any depreciation or loss, cited Rozet v. McClellan, 48 Ill. 345; Granite Bank v. Richardson, 7 Met. 407; Robinson v. Hurley, 11 Ia. 410; Smouse v. Bail, 1 Grant's Cas. 398; Story on Bailments, § 315.

Messrs. BRANDT & HOFFMAN, for appellee; that sureties and grantors are favorites in law and have a right to stand upon the strict terms of their obligations, cited Ludlow v. Simons, 2 Caines' Cases, 56; Law v. East India Co. 4 Vesey, 824; Kingsbury v. Westfall, 61 N. Y. 356; State v. Hance, 62 Ill. 55; The People v. Tompkins, 74 Ill. 486; Miller v. Stewart, 9 Wheaton, 680; Reynolds v. Hall, 1 Scam. 35.

A surety or guarantor is under no moral obligation to pay the debt of his principal: Winston v. Fenwick, 4 Stew. & Port. (Ala.) 269; Harrison v. Field, 2 Wash. (Va.) 136; Pickersgill v. Lahens, 15 Wallace, 140; Pecker v. Julius, 2 Browne (Pa.), 31; Van Derveer v. Wright, 6 Barb. (N. Y.) 547; Ris-

ley v. Brown, 67 N. Y. 160; Weaver v. Shyrock, 6 Serg. & Rawle (Pa.), 262; Rawstone v. Parr, 3 Russell, 539; Kennedy v. Carpenter, 2 Wharton (Pa.), 344; Other v. Iveson, 3 Drewry, 177; Town v. Ammidown, 20 Pick. 535; Wood v. Fish, 63 N. Y. 245.

A surety is discharged where the creditor relinquishes or renders unavailable for the payment of the debt the thing pledged: Houston v. Hurley, 2 Del. Ch. R. 247; Morley v. Dickinson, 12 Cal. 561; Spencer v. Thompson, 6 Irish C. L. R. 537; Comstock v. Creon, 1 Robinson (La.), 528; Alexander v. Bank of Commonwealth, 7 J. J. Marsh. (Ky.) 580; Winston v. Yeargin, 50 Ala. 340; Bank v. Fordyce, 9 Pa. St. 275; Shannon v. McMullen, 25 Gratt. 211; Finley v. King, 1 Head (Tenn.), 123; Welles v. Green, 5 Grant's Ch. R. 655; Parker v. Nations, 33 Tex. 210; Davis v. Mikell, 1 Freeman's Ch. R. 655; Lumsden v. Leonard, 55 Ga. 374; Quick v. Black, 2 C. E. Green (N. Y.), 189; Robeson v. Roberts, 20 Ind. 155; Taylor v. Morrison, 26 Ala. 728; Baker v. Briggs, 8 Pick. 121; Law v. East India Co. 4 Vesey, 824; Hayes v. Ward, 4 Johnson's Ch. 122; Beale v. Bank, 5 Watts (Pa.), 50; Slevin v. Morrow, 4 Ind. 425; Williams v. Price, 1 Simons & Stuart, 581; Trotter v. Crockett, 2 Porter (Ala.), 401; Willis v. Davis. 3 Minn. 17; Cummings v. Little, 45 Me. 183; Loop v. Summers, 3 Rand (Va.), 511; N. H. Savings Bk. v. Concord, 15 N. H. 119; Armor v. Amis, 4 La. An. 172; Wharton v. Domean, 83 Pa. St. 40; Ives v. Bank, 12 Mich. 361; Bonney v. Bonney, 29 Ia. 448; Hurd v. Spencer, 40 Vt. 581; Foss v. City of Chicago, 34 Ill. 488; Am. Bk. v. Baker, 4 Met. (Mass.) 164; Kirkpatrick v. Howk, 80 Ill. 122.

The bank had a *legal* right to the indemnity: Rogers v. School Trustees, 46 Ill. 434; Phares v. Barbour, 49 Ill. 375; Kirkpatrick v. Howk, 80 Ill. 126.

A surety is discharged when the creditor accepts as collateral security for a debt, the obligation of a third person, and through his negligence in failing to enforce the obligation, it is lost: Kemmerer v. Wilson, 31 Penn. 110; Noland v. Clark, 10 B. Mon. (Ky.) 239; Jennison v. Parker, 7 Mich. 355; Sellers v. Jones, 22 Pa. St. 423; Hill v. Bourcier, 29 La. An.

841; Lamberton v. Windom, 18 Minn. 506; Douglas v. Reynolds, 7 Peters, 113; Lee v. Baldwin, 10 Ga. 218; Shippen's admr. v. Clapp, 36 Pa. St. 89; Wakeman v. Gowdy, 10 Bosw. (N. Y.) 208.

Wilson, J.  This is an action of assumpsit brought by appellant against appellee, Loomis, as guarantor of a promissory note for $3,000, executed by John N. Babcock and C. O. Ten Broecke, payable to the order of the International Bank. The note was indorsed by the bank to appellant for collection merely, and this suit is prosecuted for the benefit of the bank.   There was a verdict and judgment for the defendant, and the plaintiff appealed to this court.

It appears from the bill of exceptions that in addition to the note in question, the Home National Bank of Chicago held Loomis' judgment note for $3,500; that Samuel Hale's Sons held a note executed by John N. Babcock, payable to the order of Charles O. Ten Broecke, for $1,000 guaranteed by Loomis; and that the International Bank held a note dated March 14, 1878, for $2,420.97 signed by Babcock and guaranteed by Ten Broecke upon which Loomis was not liable.

Desiring to protect Loomis against loss, by reason of his liability on the three notes first above mentioned, and upon which Loomis had become liable merely for the accommodation of one S. D. Cozzens, and also to secure the bank on said last named note for $2,420.97, Cozzens having claims against the Illinois Central Railroad Company and the Chicago, Burlington and Quincy Railroad Company, arising out of an alleged infringement by those companies of the so-called "Tanner Car Brake Patent," assigned his interest in said claim to L. H. Bisbee, in trust as collateral security for Loomis and the bank, and placed in the hands of Bisbee releases running to the railroad companies respectively, executed by one James D. Morey, as trustee, purporting to release the roads from all claims for damages incurred by them, by reason of the alleged infringement.   At the same time a written agreement, in the nature of a declaration of trust, was entered into between Cozzens and Bisbee, defining the trusts imposed upon the latter

as assignee of the claims against the railroad companies, by the terms of which it was provided, *inter alia*, that if at the expiration of six months from the date of the agreement, Cozzens should not have paid the three thousand dollar note in suit, and the other notes specified in the agreement, including the Babcock note of March 14, 1878, for $2,420.97 payable to the bank, that then the claims against the railroad companies, together with the releases of damages, executed by Morey, might be sold by Bisbee at public or private sale, at his discretion, without advertising the same or giving notice, the proceeds of the sale to be applied to the note in suit, and the other notes referred to in said agreement, the surplus, if any, to be paid over to Cozzens.

Cozzens having failed to pay as stipulated, Bisbee, September 21, 1878, at the request of Loomis and Lowenthal, who was president of the bank and acted for it as its agent and representative in all matters relating to the notes in question, went through the form of a sale of the claims and releases to Loomis and Lowenthal jointly for the sum of $1,500. It is obvious, however, from the proofs, that no sale was in fact consummated, and such is the view taken by the learned counsel for appellant. No sale having taken place, the claims remained in Bisbee's hands, subject to the trusts prescribed in the original agreement. Such being the state of affairs, Bisbee, and his partner, Monroe, at the request of Loomis and Lowenthal, entered into negotiations with the two railroad companies, and as they testify, the Illinois Central Company offered in settlement of the claim against it $3,000, and the Chicago, Burlington and Quincy Company offered $8,000, making an aggregate of $11,000.

The evidence tended to show that Loomis and Bisbee desired to accept the money thus offered, and would have done so but for the interference of Lowenthal, who refused to consent, and by his refusal prevented the sale from being consummated.

It further appears that shortly thereafter, by a decision of the Supreme Court of the United States, the patent was adjudged to be invalid, whereby the claim for damages against

the railroad companies became valueless, and the security was lost.

The court instructed the jury, in substance, that if the facts, as alleged by the defendant, in relation to the offer of the railroad companies, were proved, and that Lowenthal knew of the offer, and that $11,000 could be realized therefrom, and with such knowledge refused to let said securities be sold and prevented a sale of the same, and that such sale would have been made, and said note paid, but for such interference of Lowenthal, and that shortly after such refusal of Lowenthal said securities became worthless, such facts, if proved, would release Loomis as guarantor on said note.

Appellant's counsel have cited numerous decisions to show that a creditor holding a pledge as collateral security for a debt, is not bound (except in cases of negotiable paper) to take any steps to realize on the security thus held, and is not chargeable with the loss or depreciation in value of the pledge arising from the mere omission of the creditor to act.

That such is the general rule is undoubted. The creditor in such cases does not take upon himself the character or duty of agent of the pledgor to sell the collateral. He may do so, if properly authorized, but unless required by the terms of the pledge to take some action, he may remain passive. The remedy of the debtor is to pay the debt, and thereby redeem the pledge, or if the pledge is primarily for the protection of the surety, the latter may pay the creditor, and himself realize on the pledge. The collateral in the present case not being a negotiable instrument, no diligence on the part of the bank was required, and the bank in the absence of any interference by Lowenthal, as its representative, had the right to pursue Loomis as guarantor, wholly ignoring the collateral. If, therefore, Lowenthal had remained simply passive, and Bisbee had failed to dispose of the pledge until it had become worthless, the liability of Loomis, as guarantor, would have remained unaffected.

But while the general rule is as above stated, very different considerations apply where the creditor by his acts or interference, destroys or renders unavailing, securities or

other property pledged for the payment of debt. By the strong preponderance of the evidence, it is shown that the railroad companies offered for the claims deposited with Bisbee for Loomis' indemnity, an amount sufficient to pay all the indebtedness to the bank, for which he was liable, as well as to pay the note of March 14th, on which he was not liable; that Loomis was anxious to have the offer accepted, and to be thereby released from liability, but Lowenthal, acting for the bank refused to consent, and the sale was thereby defeated.

. If, then, the collateral was of value, and was lost through the interference of Lowenthal, as the agent and representative of the bank, it would seem, upon principle, that the bank and not Loomis should suffer the loss. And this view is, we think, in accordance with the doctrine of all the adjudged cases. It is not necessary for us, if time permitted, to refer to the cases in detail. The general principle is succinctly stated in the leading case of Law v. The East India Company, 4 Ves. 824, where it is said, "Where any act has been done by the obligee, that may injure the surety, the court is very glad to lay hold of it in favor of the surety." It is familiar law that sureties are the favorites of courts. It is affirmed in many decisions, that a surety is under no moral obligation to pay the debt of his principal; a claim against him is *strictissimi juris*. It seems to be a principle universally recognized and acted upon by the courts, that if a creditor has a surety for a debt, and also holds a pledge of any kind for the same debt, and he relinquishes or renders unavailable for the payment of the debt the thing pledged, the surety is discharged to the extent of the value of the pledge. Notes in Coggs v. Bernard, 1 Smith's Lead. Cases; Story on Bailm. Sec. 332 and notes. See also numerous cases cited in appellee's brief. This rule does not depend upon contract but is inherent in the relation of principal and surety. It has been acted upon nowhere more frequently than by the courts of this state. Rogers v. School Trustees, 46 Ill. 428; Phares v. Barbour, 49 Ill. 370; Kassing v. International Bank, 74 Ill. 16; Kirkpatrick v. Howk, 80 Ill. 122.

In Rozet v. McLellan, 48 Ill. 345, cited in appellant's brief,

certain stock was pledged as collateral to the note, with power in the pledgee to sell in case of default in payment. No sale was made and afterward the stock depreciated. The court, after laying down the general rule as first herein above stated, says: " The pledgor having the general property in the pledge, may sell it and compel its restoration upon paying the money to redeem. Had appellant found a purchaser for the stock, who had tendered the amount of the note, and appellee had refused to deliver it to him as the purchaser, on the order of appellant, then a very different question would have been presented for our consideration." This case is in entire accord with the doctrine of all the cases, and is only another illustration of the strictness with which courts protect the rights of sureties as against any act on the part of the creditor that may tend to his disadvantage.

It is insisted by appellant's counsel that as a power of sale was vested in Bisbee, who could exercise the same at his discretion, he should not have been controlled by the option of Lowenthal. While, it is true, Bisbee might have sold regardless of the wishes of Lowenthal, if by the act of the latter, he was in fact deterred from making the sale, Lowenthal can not be heard to say, as against the rights of a surety who has suffered by his interference, you ought to have sold notwithstanding my refusal to consent. The bank was one of the beneficiaries interested in the pledge; and being such it was but natural Lowenthal's wishes should influence the action of the trustee. If the trustee failed to do his duty to the injury of the surety, and Lowenthal, as the representative of the bank, was the cause of such failure, it would be contrary to the plainest principles of justice and equity, that the bank should charge the loss to the surety.

It is also insisted that there is no evidence in the record that Cozzens had any title to the patent, and that neither he nor Bisbee, as his assignee, had or could have any title to or right of property therein, inasmuch as the Supreme Court held that the patent was invalid. It is sufficient to say that at the time of making the offer of $11,000, the patent had been decided by the Circuit Court of the United States to be valid, and evi-

dence was given to the effect that Cozzens' title had been examined by Mr. Ayer, the solicitor of the Illinois Central Company. It is therefore fairly inferable that the railroad companies were satisfied as to the title or they would not have offered so large a sum. But it is enough, that with such knowledge as they had, they were willing to pay the amount offered. If the money had been accepted, it would not be contended that it could be recovered back merely on the ground that the court had decided a disputed title against Cozzens, the money having been voluntarily paid with a full knowledge of all the facts.

Other grounds for reversal of a technical nature were urged which we do not deem it necessary to discuss. It is not perceived that any of them are well taken. Without going further into the case, our conclusion is, that the judgment must be affirmed.

Judgment affirmed.