## RUSH v. FIRST NAT. BANK OF KANSAS CITY.

(Circuit Court of Appeals, Eighth Circuit. December 2, 1895.)

No. 645.

1. APPEAL—QUESTION NOT RAISED BELOW.

The fact that an amended counterclaim stated a cause of action different from that alleged in the first answer is not ground for objection for the first time on appeal.

2. ACTION ON NOTE—PARTIAL PAYMENT—TENDER OF AMOUNT DUE.

In an action on a note, plaintiff averred that it had made a valid sale of securities pledged for the note, and had credited the proceeds on the note, and prayed a judgment for the amount of the note, less such credit. Defendant pleaded that the alleged sale was unlawful, and that, as plaintiff had wrongfully appropriated the securities pledged, defendant was entitled to a credit for their full value. *Held*, that defendant was not bound to tender the amount due on his note, as a condition precedent to making such defense.

3 SAME—COUNTERCLAIM.

The wrongful act complained of by defendant's answer was so connected with the transaction set forth by plaintiff as to constitute a valid counterclaim, under Gen. St. Kan. 1889, par. 4178.

In Error to the Circuit Court of the United States for the District of Kansas.

The first National Bank of Kansas City, Mo., the defendant in error, sued J. W. Rush, the plaintiff in error, in the circuit court of the United States for the district of Kansas, to recover the amount due on a promissory note which was executed by the defendant in the following form:

"$3780.                                            Kansas City, Mo., Feby. 5, 1894.

"Sixty days after date, I promise to pay to the order of 1st Nat. Bank, Kansas City, Mo., thirty-seven hundred eighty $^{00}/_{00}$ dollars, at its office in Kansas City, Mo., for value received, with 8 per cent. interest from maturity; and attached hereto, as collateral security, ten (10) shares of the capital stock of 1st Nat. Bank, Ness City, Kansas; also sixty-four (64) shares of the capital stock of 1st Nat. Bank of Dighton, Kansas,—with full authority to said bank or its assigns to sell the same at public or private sale, without notice, on non-payment of this note.                                            J. W. Rush."

The plaintiff bank alleged, in substance, that it had realized the sum of $740 by the sale of the collateral described in the aforesaid note, and that it had indorsed that amount as a credit on the note on June 29, 1894. It prayed judgment for the balance due on said note, together with accrued interest.

The defendant filed an answer to the complaint, which was adjudged insufficient, and thereafter an amended answer, which was as follows: "Comes now the said defendant, and for his amended answer herein, by leave of court first had, says that he admits the execution and delivery of the promissory note in said petition described, and that the plaintiff is a corporation, and alleges that at the time of the execution and delivery of said note, and as a part of the same transaction, the defendant delivered to said plaintiff, as collateral security therefor, sixty-four (64) shares of the capital stock of the First National Bank of Dighton, Kansas, and ten (10) shares of the capital stock of the First National Bank of Ness City, Kansas, all of which shares were of the face value of one hundred dollars per share, and were fully paid up, and of the actual market value of seventy-four hundred dollars; that afterwards, on or about June 29, 1894, without having demanded payment of said defendant of said note, and without having given any notice to defendant to redeem said stock, or of the sale hereinafter mentioned, the said plaintiff pretended to make a sale of said stock to one Richard Allen, who is and was a colored porter or janitor in the employ of said bank, for the sum of $740; that said sale was made privately, and without any effort to obtain a better price therefor, and that the same was grossly inadequate, and not the fair

value of said stock, which is and was of the value of $7,400. And defendant alleges that the sale to and purchase by said Richard Allen was for the secret benefit and in the interest of said plaintiff, and said purchaser held the same as trustee for said plaintiff; that, after said pretended sale to said Richard Allen, said plaintiff and its said trustee, Richard Allen, though concealing such relation, caused and procured the stock of this defendant to be surrendered to the said several national banks of Dighton and Ness City, Kansas, and transferred on the books of said banks to the name of said Richard Allen, and caused new certificates of stock to be issued in the name of and to said Richard Allen, and the certificates of stock of this defendant so pledged to said plaintiff were canceled; that said plaintiff, from the time of said sale and the transfer and cancellation of the certificates of this defendant, and the issuance of said new certificates to said Richard Allen, claimed that the same belonged to said Richard Allen, free and clear of all claim of this defendant, and said Richard Allen has since said time claimed to have and to exercise complete and absolute ownership over the same, and has disposed of the same as his sole and absolute property, free and clear of all claim or right of this defendant; that by reason of the premises a tender of the amount of this defendant's debt, and a demand of said plaintiff and said Richard Allen, would have been unavailing and fruitless; that by reason of the premises said plaintiff has become liable to this defendant for the value of said stock certificates so pledged to it as collateral, and so converted to its use and benefit, as herein alleged, with interest at the rate of six per cent. per annum from June 29, 1894, which sum is now due and owing, and wholly unpaid. Wherefore, defendant prays judgment against said plaintiff for the sum of $7,400 with interest at six per cent. per annum from June 29, 1894, and that the same be set off against the claim of the plaintiff herein to the amount thereof, and for judgment for the balance over said plaintiff's claim, to wit, for $3,620, and for costs of suit, and for such other relief as may be proper." To the foregoing answer the plaintiff filed a general demurrer on the ground that the answer did not state facts sufficient to constitute a defense to the action, which demurrer the circuit court sustained. The defendant declined to plead further, whereupon a judgment was rendered in favor of the plaintiff for the sum of $3,307.81. The case has been brought to this court by a writ of error, which was sued out by the defendant.

Eldon J. Cassoday (C. N. Sterry, W. H. Vernon, and E. A. Austin filed brief), for plaintiff in error.

F. Dumont Smith, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

That the bank had no right to purchase the hypothecated stock in the manner alleged in the answer, nor in any other manner or form, admits of no doubt. Being the pledgee of the stock, it could not lawfully become a purchaser thereof at a sale made by itself. Easton v. Bank, 127 U. S. 532, 537, 8 Sup. Ct. 1297; Maryland Fire Ins. Co. v. Dalrymple, 25 Md. 242, 265; Baltimore Marine Ins. Co. v. Dalrymple, Id. 269, 302; Stokes v. Frazier, 72 Ill. 428; Parsons, Cont. (7th Ed.) § 120. This proposition is not controverted by counsel for the bank. It is conceded that the sale and purchase of the securities in the mode described in the defendant's answer was a tortious act. But, notwithstanding that concession, it is insisted that the defendant could not maintain his counterclaim without first tendering the amount due on his note, and demanding a return of the hypothecated stocks. Incidentally, the plaintiff also contends that the first answer which was filed by the defendant contained averments

which made the counterclaim a suit in trover for the conversion of the shares of stock, whereas it is said that the second or amended counterclaim is in the nature of a suit ex contractu. On this ground it is urged that the trial court properly sustained the demurrer. We need not stop, however, to consider the latter contention; for, even if it be true that the second counterclaim did state a cause of action different from that alleged in the first answer, still the question now argued was not raised by the demurrer, and is not available in this court. Even if the plaintiff was privileged to demur to the amended answer on the ground that it was a departure from the original pleading, it did not do so. The point that there was a departure is raised for the first time in this court, and for that reason it cannot be noticed.

The important question in the case is whether the defendant below should have pleaded a tender of the debt due to the bank, and a demand for the return of the securities held in pledge, and whether the counterclaim is bad for that reason. Numerous cases have been cited in support of the proposition that a wrongful sale by the pledgee of property held in pledge does not, ipso facto, determine the contract of pledge; that the contract still remains in force; and that the pledgee must in every instance be given an opportunity to comply with his contract, by a tender of payment on the part of the pledgor, and by a demand of the property held in pledge, before the pledgor can maintain an action against the pledgee for conversion, or any other action based on the tortious act of the pledgee. Prominent among the cases thus cited, which are supposed to support the foregoing proposition, are the following: Talty v. Trust Co., 93 U. S. 321; Donald v. Suckling, L. R. 1 Q. B. 585; Lewis v. Mott, 36 N. Y. 395, 401; Hopper v. Smith, 63 How. Prac. 34, 38; Day v. Holmes, 103 Mass. 306, 311. On the other hand, it has been frequently decided that after the pledgee has wrongfully sold and disposed of the pledged property, so that a demand for the return thereof would be a nugatory act, no antecedent tender of the amount due, nor demand for a return of the property, is necessary, to enable the pledgor to maintain an action against the pledgee. Cortelyou v. Lansing, 2 Caines, Cas. 200, 214; Fletcher v. Dickinson, 7 Allen, 23, 26; Baltimore Marine Ins. Co. v. Dalrymple, 25 Md. 269, 306; Work v. Bennett, 70 Pa. St. 484, 488; Booth v. Powers, 56 N. Y. 27; Read v. Lambert, 10 Abb. Prac. (N. S.) 428; Manufacturing Co. v. Gray, 19 Colo. 149, 160, 34 Pac. 1000. It is unnecessary at present to enter upon a critical review of the foregoing cases, and many others of a like character that have been cited, with a view of ascertaining whether they can be reconciled. It is doubtless true that, where property which is held in pledge has been sold or transferred to an innocent third party, the pledgor will not be permitted to maintain an action against the innocent transferee without tendering the amount of the debt for which the property was originally pledged, or so much thereof as remains unpaid. Such was the state of facts disclosed in the cases of Talty v. Trust Co. and Donald v. Suckling, supra. Under some circumstances, the same rule would doubtless be enforced in a suit brought by the pledgor against the pledgee, as appears to have

been done in Day v. Holmes, 103 Mass. 306, 310, where it was held that the transfer of the property by the pledgee to a third party was not made under such circumstances as amounted in law to a conversion. On the other hand, it is doubtless true that when the tortious act of the pledgee clearly amounts to a conversion,—as where he has surrendered pledged securities to a third party to be canceled, or where he has placed them beyond his reach, and is unable to restore them,—an action may be maintained by the pledgor against the pledgee without an antecedent tender, or a demand that they be returned to him. Fletcher v. Dickinson, 7 Allen, 23; Manufacturing Co. v. Gray, 19 Colo. 149, 34 Pac. 1000; Read v. Lambert, supra. But even in such cases the pledgee, when sued for conversion, may, as it seems, recoup, as against the pledgor, any balance of the debt that is due to him from the pledgor. Work v. Bennett, 70 Pa. St. 484. The case at bar is clearly distinguishable from all the cases to which our attention has been directed, in this important respect, namely, that the pledgee is the moving party. The plaintiff bank sues to recover a balance alleged to be due on the pledgor's note. It avers that it has made a valid sale of the pledged securities, and has credited the proceeds on the defendant's note. It accordingly prays for a judgment for the amount of the note, less the amount of the alleged credit. It does not by its petition concede that the sale of the stocks was illegal, and offer to restore them on payment of the note. The defendant, on the other hand, pleads that the alleged sale was unlawful, and that, inasmuch as the plaintiff has wrongfully appropriated the stocks left in pledge, he is entitled to a credit for their full value. On this state of facts, we are of opinion that the defendant was not bound to tender the amount due on his note as a condition precedent to making the aforesaid defense. The defendant's position is that he owes nothing on the note, because the stocks which were wrongfully converted by the plaintiff were of greater value than the face of the note. He was under no obligation, therefore, when sued by the pledgee, to make a tender, or to demand a restoration of the stocks. The Code of Kansas provides, in substance, that a counterclaim may be pleaded by a defendant when it arises out of "the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or [is] connected with the subject of the action." Gen. St. Kan. 1889, par. 4178. There can be no reasonable doubt, we think, that the wrongful acts complained of in the defendant's answer were so connected with the transaction set forth in the plaintiff's petition as to constitute a valid counterclaim. In the action on the note the defendant was entitled to recoup the damages which he had sustained in consequence of the wrongful appropriation of the stocks which were pledged to secure the payment of the note, even though the counterclaim did sound in tort, rather than in contract.

It results from these views that the action of the circuit court in sustaining the demurrer to the amended answer was erroneous. Its judgment is therefore reversed, and the case is remanded to that court with directions to grant a new trial.