### BROWN et al. v. FIRST NAT. BANK OF NEWTON, KAN.

(Circuit Court of Appeals, Seventh Circuit. January 7, 1902.)

#### No. 794.

1. PROMISSORY NOTES—ACTIONS—DEFENSES COGNIZABLE AT LAW.
   The payee of a note, who, without the consent of the makers, releases a judgment which the principal maker held by assignment and pledged as collateral, is chargeable with the value of such collateral as a payment on the note, and the fact is a defense available to both principal and sureties, and cognizable in a court of law as well as in equity.

2. SURETY—DEFENSES—MISAPPLICATION OF COLLATERAL.
   A surety on a note has the right to insist on the performance of an agreement made between the principal and payee that the proceeds of collateral security held by the latter shall be applied on such note, rather than upon other indebtedness of the principal for which the surety is not bound.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Wm. E. Brown, for plaintiffs in error.

Blewett Lee, for defendant in error.

Before JENKINS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

BUNN, District Judge. This action was brought by the First National Bank of Newton, Kan., against William E. Brown, Cora E. Brown, and Thomas J. Norton upon a promissory note for the sum of $3,366.75, upon which was indorsed as credits $125 July 9, 1898, and $215 on the same date, being proceeds of two different claims. The note was signed by the three defendants. The defendants pleaded that William E. Brown was the principal upon the note, and the other two defendants were sureties, and that the plaintiff was cognizant of this relation.

Among other defenses, it was claimed that the note sued upon was a renewal of a series of notes given by the defendants to the plaintiff, and running back several years; that defendant Brown had turned over a note and mortgage about November, 1891, for $2,500, against one Hodgson and wife to the plaintiff, as collateral security to the note in suit; that prior to this time one G. W. Rogers had owned this note and mortgage, and had commenced a suit thereon in the district court of Harvey county, Kan., to foreclose the same, and afterwards had sold the note and mortgage to William E. Brown, who had assigned the same to the plaintiff as collateral security for the note in suit; that judgment was afterwards rendered on the said note and mortgage in the case of Rogers against Hodgson and wife, which was a personal judgment against them for $3,912.50, as well as a foreclosure against the property described in the mortgage; that afterwards Rogers assigned said judgment to Brown by a separate instrument of assignment, and that Brown by another instrument of assignment assigned the same to the bank as collateral security for his note for which the note in suit is a renewal, and that Rogers assigned on the judgment docket the said judgment direct to the bank by an assignment absolute in form, but really for the purpose of passing title to the bank, that the same might be held as collateral security for the note of Brown; and afterwards the foreclosed property was sold at sheriff's sale, and the bank bid it in for $500 under an agreement with Brown that the bank should hold the property as collateral security, as it held the balance of the judgment. The defendants also claimed that, without the knowledge or consent of any of the defendants, the bank released from the lien of the judgment about $20,000 worth of real estate in Harvey county, Kan., which was free and clear of all incumbrances except said judgment; that this release was made by the bank on the 14th of April, 1893, and that afterwards, on the 13th of June, 1898, the bank released the balance of the judgment in full, and that the judgment amounted to about two or three times the amount of the note sued upon; that the judgment debtors are solvent, and had ample property to pay this judgment, and that thereby the security has been lost to the said Brown, and that the sureties were deprived of the benefit of the collateral, and that thereby the obligors on the note had been released and discharged. This defense is set up also by another plea substantially in the same manner, and the whole contention in the case relates to this defense. There was a jury trial, and the plaintiff on the trial introduced the note in evidence, and rested. There was much time occupied by the defendant in putting in testimony to substantiate the allegations of his several pleas. There was also a written stipulation as to much evidence which was introduced by the defendant, and there is no contention but that the evidence introduced tended to prove the allegations of the defendants' defense in regard to the releasing of the collateral securities without the consent of Brown.

Before the defendants had got through with their testimony or rested their case, and without any rebutting testimony being offered,

plaintiff's counsel made a motion to direct a verdict in favor of the plaintiff for the amount of the note and interest, and the court accordingly took the case from the jury, directing a verdict as requested. The principal question in the case is whether this was error. The reason assigned by the court for directing a verdict was that the matters of defense were cognizable only in a court of equity, and not in a court of law. The court stated in its charge to the jury that:

"In the opinion of the court, all of the testimony relating to the satisfaction of the judgment, which has been referred to in the testimony as collateral held by the bank, is a matter which can only be adjudged in a court of equity; that in a court of law the judgment, on the undisputed testimony, as far as has been heard or offered, is not satisfied until the judgment is paid in full, and it is not so satisfied; that, if there had been any wrong done to the defendants by the bank, there was a perfect remedy in the courts of equity; and we, sitting in a court of law, can determine only law matters, generally speaking, and not determine matters of equitable consideration, unless it be in a plain and simple case at the utmost. Here it is complicated beyond measure, and I am satisfied that it is not one that can be adjudged here."

This was error. We think that the several defenses upon which evidence was introduced on the part of the defendants should have been submitted to the jury. We cannot see from the bill of exceptions that the matter was so very complicated. At any rate, we are satisfied that the matters set up as defense, and which the evidence of the defendants tended to prove, were matters of legal, as well as of equitable, cognizance. If these matters were true, as alleged by the defendants' pleas, and as their evidence tended to show, it furnished a reason in law why there should not be a verdict for the plaintiff. The evidence showed beyond controversy that the bank had tried to get Brown's consent to release the judgment, but he had constantly refused to give it, and told them that they must not release it, and that they released it contrary to his express will and direction. If that be so, and they were turned out as collateral to the note in suit, it is difficult to see why the releasing of the judgment was not a defense at law, as in equity. The evidence on the part of the defense, as appears by the bill of exceptions, does not show a case more complicated than thousands of other cases at law that are daily submitted to the consideration of a jury, and we think that is no reason why they should not be submitted, and especially as to the sureties upon the note of Brown the releasing of the collateral security was a complete defense to the action on the note against them. They signed the note as surety with Brown, and it was incumbent on the bank to collect these securities, and apply them upon the note, and the releasing of such collateral securities, without the consent of Brown or of the sureties, would most certainly relieve the sureties of their obligation.

In Hayes v. Ward, 4 Johns. Ch. 130, 8 Am. Dec. 556, Chancellor Kent lays down the rule as follows:

"The surety, by his very character and relation as such, has an interest that the mortgage taken from the principal debtor should be dealt with in good faith, and held in trust, not only for the creditor's security. but for the surety's indemnity. A mortgage so taken by the creditor is taken and held

in trust, as well for the secondary interest of the surety, as for the more direct and immediate benefit of the creditor; and the latter must do no willful act, either to poison it in the first instance, or to destroy or cancel it afterwards."

And Coleb. Coll. Sec. (2d Ed.) § 114, lays down the rule thus as between principals, as follows:

"If, upon a pledge of negotiable collateral securities so as to convey the title thereto, the pledgee, because of his gross negligence, or by his tortious transfer of them, or dealings therewith, fails to collect the same of the parties bound thereto, when it might have been done, and the pledgor is injured, and the amount of the collateral security lost, the pledgee is chargeable with the face of such collateral securities as in payment and discharge of the principal debt."

Payment and discharge of the principal has always been a good defense at law as well as in equity. And in regard to sureties the same author, at section 239, lays down the rule as follows:

"A surety is discharged from his liability on the principal obligation by an affirmative act of the creditor by which the terms of the contract of suretyship are changed to the prejudice of the surety without his consent. Such discharge results from a valid and definite extension of time, or by unauthorized changes in the instrument, or by new duties and responsibilities imposed upon the principal, or by the conduct of the creditor in relation to collateral securities received by him from the principal debtor to secure the payment of the debt. A creditor holding collateral securities is chargeable with a trust concerning the same for the benefit of the surety, where he has notice of the existence of such relations as between the parties to the note. By his voluntary acceptance of such securities, the creditor assumes responsibilities in relation thereto not ordinarily undertaken by the holder of paper upon which are the names of the principal and surety. The personal obligation of the surety to pay the note upon default of the principal is not affected by the receipt of such collateral securities by the holder from the debtor, but the interest of the surety in the proper management and realization of such securities is recognized at law and in equity. If the creditor by an act of a positive character, or by his gross negligence or bad faith, and without the consent of the surety, releases, surrenders, impairs, destroys, or fraudulently transfers such collateral security, so as to defeat any claim of the surety, upon payment of the debt to be subrogated thereto for his indemnification the surety is discharged to the extent of his actual loss at any rate, and his whole liability in case of fraud or negligence so gross as to raise a presumption of fraud; and, under the tendency of modern legislation and decisions, the surety is entitled to interpose in an action at law by the creditor the like defenses as above stated, as in equity. His discharge results in the one case equally as in the other."

Parker, C. J., in Bank v. Colcord, 15 N. H. 119, 41 Am. Dec. 685, lays down the rule very concisely, as we think, as follows:

"We have repeatedly recognized the rule originating in equity, but now generally held to be equally a rule at law, that a binding contract for further delay of the time of payment, made between the creditor and the principal, without the assent of the surety, discharges the latter from the obligation of the contract; and it follows, almost as a matter of course, that we should, so far as we may consistently with the forms of proceedings at common law, apply the principles of equity which regulate the relation of principal and surety. People v. Jansen, 7 Johns. 337, 5 Am. Dec. 275. Among those, as we have had occasion to notice in other cases, is one which requires a creditor, who has an obligation executed by principal and surety, and who has also a collateral security from the principal, to appropriate the avails of the security to the payment of the debt, or to hold it for the benefit of the surety, who, if he pay the debt, will be subrogated

to the rights of the creditor. This being the duty of the creditor, if he surrenders such collateral security without the knowledge of the surety the latter will be discharged entirely, or pro tanto, according to the value of the security thus surrendered;" citing Law v. East India Co., 4 Ves. 824; Baker v. Briggs, 8 Pick. 122, 19 Am. Dec. 311; 1 Story, Eq. Jur. § 326; McCollum v. Hinckley, 9 Vt. 147; Bank v. Bartlett, 13 Vt. 315, 37 Am. Dec. 594; Commonwealth v. Vanderslice, 8 Serg. & R. 457; Same v. Lebo, 13 Serg. & R. 175.

This case was an action at law upon a promissory note, and the defense set up was the discharge of collateral securities, and in all essential respects the case was similar to the case here. There was a verdict and judgment for the defendant. The supreme court held the defense good at law, but reversed the case upon other grounds. In Rogers v. Trustees, 46 Ill. 429, in a similar case, the supreme court of Illinois said:

"Under the more stringent and technical rule of the ancient common law, it was held that relief could only be had in equity to discharge a surety. But, under the tendency of modern decisions, substance is more regarded than mere form, and the doctrine seems now to be recognized that whatever discharges a surety in equity may be interposed in a suit at law unless there be such a complication of interests as would prevent a court from affording adequate relief. * * * And we see no reason why a court of law is not just as competent to try the defense as that of equity, and no practical benefit is perceived in compelling the surety to resort to the more tedious and expensive mode of trial to obtain a discharge. We are therefore inclined to follow these authorities, and permit this defense to be made. We are therefore of the opinion that appellant has established a complete defense on his part to the note, and that the court below erred in rendering judgment against him;" citing the following cases: Samuell v. Howarth, 3 Mer. 272; Mayhew v. Crickett, 2 Swanst. 185; Hawkshaw v. Parkins, Id. 539; Eyre v. Everett, 2 Russ. 382; Mackintosh v. Wyatt. 3 Hare, 567; Moore v. Bowmaker, 6 Taunt. 379; Philpot v. Briant, 4 Bing. 717.

This doctrine has been affirmed in other and later cases by the same court. Kirkpatrick v. Howk, 80 Ill. 122; Price v. Bank, 124 Ill. 317, 15 N. E. 754, 7 Am. St. Rep. 367. See, also, the following cases: Guild v. Butler, 127 Mass. 386; Ingalls v. Morgan, 10 N. Y. 178; Chester v. Bank, 16 N. Y. 336; Lewis v. Palmer, 28 N. Y. 271; Nelson v. Munch, 28 Minn. 314, 9 N. W. 863; Baker v. Briggs, 8 Pick. 122, 19 Am. Dec. 311; Rush v. Bank, 71 Fed. 102, 17 C. C. A. 627; Brandt, Sur. § 426; Fielding v. Waterhouse, 8 Jones & S. 424; Lewis v. Armstrong, 80 Ga. 402, 7 S. E. 114; Clow v. Coal Co., 98 Pa. 432.

We think also the thirteenth assignment of error is supported by the record. After the motion to take the case from the jury and direct a verdict for the plaintiff had been argued, but before it was decided, the defendants offered in evidence a portion of a deposition of C. W. Goss, which went to show that Goss was vice president of the bank; that the bank sold the Broadway lots, which had been the subject of foreclosure under the Rogers-Hodgson judgment, for $1,600, the bank realizing therefrom the sum of $1,400, after paying taxes and costs. Eleven hundred and eighty-five dollars of this the bank applied upon another note of Brown, on which defendant Norton was not a surety, and applied the balance of $215 upon the note in suit. The testimony of Brown, which does not

seem to be opposed by any other evidence, was that by agreement between the parties the proceeds of this judgment was to be applied upon the note in suit. The court admitted the testimony, but at the same time held it to be immaterial, and directed a verdict for the amount of the note and interest, deducting the indorsements that had been made upon it by the bank. We think this was error. The proceeds of the judgment should have been applied according to the agreement of the parties, and not otherwise. It is true it was applied upon another note of Brown which the bank held, and so far as he was concerned it makes no great difference. Still we think he had the right to have it applied according to the agreement. But, especially as to the other defendants who signed as surety to Brown, they had the right beyond all question to have this money applied upon the note in suit, if that was the agreement. These questions presented by these two assignments of error should, we think, have been submitted to the jury. We do not care to consider any other assignments of error, of which there are a great number.

Judgment reversed, and a new trial ordered.