Wilmore *et al. v.* Stetler.

No. 16,034.

WILMORE ET AL. *v.* STETLER.

| 137 | 127 |
|-----|-----|
| 141 | 178 |
| 141 | 531 |
| 141 | 676 |
| 137 | 127 |
| 144 | 501 |
| 137 | 127 |
| 151 | 508 |
| 137 | 127 |
| 156 | 522 |

ESTOPPEL.—*Accepting Proceeds of Unauthorized Sale.—Real Estate.— Guardian and Ward.—Heirs.*—Where the guardian of a person of unsound mind petitioned the court for the sale of certain lands belonging to his ward, averring under oath that his ward was the owner thereof in fee simple, when in fact she was but tenant in common, owning a one-third interest with her children, the heirs of her deceased husband, and the petition was granted and the land ordered sold, which sale was approved and confirmed by the court, which proceeds of the sale, with the accumulated interest, except a small amount expended in support of the ward, the guardian, after the death of the ward, paid to the heirs, which the heirs accepted, when of full age, knowing it to be the proceeds of the sale of said land, and knowing at the same time what their interest in the land was, and that the money so received and accepted by them was the proceeds of the sale of their interests therein and their full shares thereof, such facts show an affirmance of the sale, by the heirs, which estops them from retaining the proceeds of the sale, and recovering their two-thirds interest in the land.

Opinion on petition for rehearing by DAILEY, J.

From the Adams Circuit Court.

*J. W. Ryan, W. A. Thompson, A. O. Marsh, J. W. Thompson, J. T. France* and *J. T. Merryman,* for appellants.

*J. Morris, R. C. Bell, J. M. Barrett* and *S. M. Morris,* for appellee.

OLDS, J.—The appellants brought this action in the court below, averring in their complaint, that one Addison G. Wilmore died testate, at the county of Adams, seized of certain real estate; that he left surviving him, as his heirs at law, his widow, Elanor, appellants, and Ellen, who died in 1871, his children.

A copy of the will is set out, and it is charged that the widow took under the law, and not under the will; that in 1868, after the death of her husband, Elanor was de-

clared of unsound mind, and a guardian was appointed for her; that the guardian applied to the Randolph Common Pleas Court for an order to sell the real estate of which Wilmore died seized; that the court ordered the guardian to sell the interest of his ward in the lands he had described in his petition; that said Eleanor had no interest in the real estate except the one-third interest inherited from her husband; that the appellants had never transferred or conveyed the interest in this real estate, which had descended from their father and sister Ellen; that the guardian of Eleanor pretended to sell the entire fee of the real estate; that one Lewis Edwards purchased the real estate at guardian's sale; that at the time he purchased, he had notice and knowledge that appellants, and the sister since dead, had and held an interest in said real estate, as the heirs at law of Addison G. Wilmore; that Lewis Edwards afterwards conveyed a part of this real estate to appellee, who holds possession of said part and claims the entire fee therein, and denies appellants' right and title to said real estate, or any part thereof; that the claim of appellee is a cloud upon the appellants' interest in, and title to, said real estate.

The relief asked was for partition, to quiet title, and possession of their interest in the land.

A demurrer was filed to the complaint, which was overruled, and the appellee answered in six paragraphs.

The appellants demurred to paragraphs of answer, and the court overruled the demurrer to the second, fourth, and fifth paragraphs of answer, to which ruling the appellants excepted.

The fourth paragraph pleads the fifteen years' statute of limitation, and the fifth paragraph pleads the twenty years' statute. They are general pleas of the statutes, alleging that the cause of action did not accrue within the fifteen and twenty years, without alleging adverse

possession. It is contended by appellants that the complaint is for partition between tenants in common, and that the answers are not good, while the appellee contends that the action is not for partition but for possession and to quiet title, and even if held to be in partition the paragraphs of answer are good.

There was a special verdict returned finding the facts, and owing to the view we take of the case it matters not whether there was error in ruling on the demurrers to these paragraphs of answer or not, for if error it was harmless. We have recently considered and passed upon the question as to the sufficiency of answers of this character in actions for partition, in case of *Peden* v. *Cavens*, 134 Ind. 494. See also *Patterson* v. *Nixon*, 79 Ind. 251 (256); *Nutter* v. *Hawkins*, 93 Ind. 260; Wood Limitations of Actions, section 266, p. 559.

The next question discussed by counsel relates to the sufficiency of the second paragraph of answer.

The complaint sets out a copy of the will; alleges the death of the testator; the survivorship of the widow and children; the insanity of the widow; the appointment of Adamson as her guardian; the petition to sell the real estate, including that in controversy. The petition to sell, which is sworn to, alleges that Mrs. Wilmore owned the land in fee simple. The answer admitted the foregoing facts. It averred that the court ordered the whole of said real estate to be sold by the guardian; that the guardian did, pursuant to the order of the court, cause the fee simple of said land to be sold for $3,500, being $400 more than its appraised and actual value in fee simple, to Lewis Edwards; that the sale was reported to, and approved and confirmed by, said court; that one-third of the purchase-money was paid in hand and the balance properly secured and afterwards paid and the

land conveyed to said Edwards; that some five hundred dollars of interest accrued on the purchase was applied to the support of the appellants and their insane mother, in accordance with the terms of the will of Addison P. Wilmore; that the said Adamson ceased to be guardian of said insane widow; that one Bodkins, the uncle of Mrs. Wilmore, was appointed the successor of said Adamson in said trust, to whom Adamson paid the money by him received as the purchase-money of said land, being $4,146 and more; that after the appellants became of full age, and after the death of Mrs. Wilmore, the said Bodkins settled with them and paid to each over $1,000, being the purchase-money of said land received by him from said Adamson; that said appellants accepted said money so paid them by said Bodkins, knowing it to be the proceeds of the sale of said real estate, and knowing at the same time what their interest in said real estate was, and that the money received and accepted by them was the proceeds of the sale of their interest therein, and their full shares thereof.

This paragraph of answer is based on the theory that the appellants, by accepting the money, ratified the sale and estopped them from attacking its validity, and while retaining the money recover the land, and thus receive and retain both the money and the land, and this paragraph of answer presents the controlling question in the case; for if by the acceptance of the money the appellants, who are the heirs, ratified the sale and estopped themselves from recovering the land while retaining the proceeds derived from the sale, it puts an end to the case, and the many other questions so ably discussed by counsel are immaterial. If the appellants ratified the sale and estopped themselves from recovering the lands, by accepting the money, such ratification and estoppel took place at the time of accepting the money, and it is

immaterial how many years had elapsed afterwards and between that time and the commencement of this suit. Nor is it material as to what construction should be placed upon the will. That this answer is good we think there can be but little doubt.

The petition of the guardian of Mrs. Wilmore to sell the real estate in controversy was sworn to, and alleged that she owned the whole of the land. The court ordered the whole of the real estate to be sold. It was duly appraised and sold for more than the full appraised value, and the sale was approved and confirmed by the court. The money was retained by the guardian, and loaned, and the accumulated interest added to it, only expending a small amount for the support of Mrs. Wilmore, and after her death the guardian paid to the appellants, who, it is claimed, owned the undivided two-thirds of the land sold, the purchase-money received, with the unexpended interest, and said heirs accepted it, knowing it to be the proceeds of the sale of said land, and knowing at the same time what their interest in the land was, and that the money received and accepted by them was the proceeds of the sale of their interests therein and their full shares thereof.

In the face of such a state of facts as are alleged in this paragraph of answer, to allow the appellants to maintain an action for and recover the two-thirds interest in the land from the purchaser for value, whose money they had received, would be such a wrong and injustice as it would seem no court ought or would tolerate, even if the sale was invalid and subject to being set aside, had the heirs not received the proceeds of the sale.

The doctrine ruling in this case is well stated in the case of *Palmerton* v. *Hoop*, 131 Ind. 23 (28), though the facts in that case differ some from the facts in the case at bar.

It is held, in that case, that the party could not re-

cover for two reasons: First, because she was a party to the proceedings to sell; and, secondly, it is said by the court that "She is also estopped from claiming the land by reason of accepting, and still retaining, a part of the price for which it was sold. She can not have both the land and the purchase-price." That is just what the appellants contend they have the right to do in this case, viz., *retain the purchase-money and also recover the land*, and if they can not be permitted to do so, then the answer is clearly good as a defense to the action.

In *Bumb* v. *Gard*, 107 Ind. 575, it is said: "Where an heir, having full knowledge that all of the estate in the land has been sold on petition of the administrator, receives and retains the purchase-money remaining after the payment of debts, he can not avoid the sale. He can not have both the money and the land. Equity will not uphold such a claim. In accordance with this general doctrine, it has often been held that an heir who has full knowledge of his right, and with such knowledge receives and retains the purchase-money, can not vacate the sale and obtain the land. This principle is often applied in analogous cases."

The case at bar is analogous to the class of cases cited. It could be no different in equity if the widow, under claim of right or ownership, had, in her lifetime, sold and conveyed for full value the whole of the land to a purchaser, and then paid the full amount of the purchase-money over to the heirs, they knowing at the time that she had no legal right to convey their interest, but that she had, in fact, conveyed it and received full value for it, and the heirs, with full knowledge of the facts and their rights, accept and retain the purchase-money so paid, and while so retaining it seek to recover the land. In either case, it would be inequitable to allow the heirs

to recover the land without refunding the purchase-money.

It is contended, by counsel for appellant, that the cases holding that the heirs or legal owners are estopped by the receipt of the purchase-money in cases where the land was attempted to be sold as the property of the parties afterwards receiving the money. This fact, it seems to us, can make no difference. In either case, if the sale was void, it would pass no title. The principle applies where there has been an illegal sale of the parties' land, and they, with knowledge of the facts, receive and retain the purchase-money.

The case of *Pepper* v. *Zahnsinger*, 94 Ind. 88, is a case, as we think, directly in point. There the administrator sold the whole of the land, and afterwards paid to the widow the one-third, or nearly the one-third of the purchase-money, and she received and retained it, and it was held that she was estopped from recovering the land. It is true, in that case, she directed the administrator to sell it, but he conveyed only as administrator, and the court held that the sale of the widow's interest was void, and the estoppel rested, on the grounds of the receipt and retention of the purchase-money, with knowledge of the facts.

In *Karns* v. *Olney*, 80 Cal. 90, the court says: "It is a well settled rule of estoppel that one who with knowledge accepts the proceeds of an unauthorized sale of his property is estopped to dispute the validity of the sale."

It would seem unnecessary to multiply authorities on this question. *Smith* v. *Worden*, 19 Pa. St. 424; *State* v. *Stanly*, 14 Ind. 409; *Lowe, Assig., etc.,* v. *Mayer*, 92 Ind. 206; *Kent* v. *Taggart*, 68 Ind. 163; *Armstrong* v. *Covelt*, 7 Ind. 476; *Bryan* v. *Island*, 101 Ind. 477.

*Maple* v. *Kussart*, 53 Pa. St. 348, is a case where the

Wilmore *et al. v.* Stetler.

administrator sold the land of the widow, which he had no right to do, and she received the purchase-price for which it sold, and it was held that she was estopped from claiming the land. In that case the court says that "It is a maxim of common honesty, as well as of law, that a party can not have the price of the land sold, and the land itself. Accordingly, it has been uniformly held, that if one receives the purchase-money of land sold he affirms the sale, and he can not claim against it whether void or only voidable."

We think the facts pleaded show an affirmance of the sale and an estoppel on the part of the appellants from claiming the land.

Counsel for appellant, in an able brief, cite numerous authorities and draw distinctions, endeavoring to show that the parties are not estopped. We do not agree with their theory, and deem it unnecessary to take up the decisions cited, and draw the distinctions in each. It is possible that the doctrine announced in some cases, carried to its full length, may conflict with the rule laid down in some of the cases cited; but that this case falls clearly within the rule laid down in the decisions we have cited and quoted from, there can be no doubt.

The next question presented arises on the special verdict. It is unnecessary to set this verdict out in full. It clearly supports the second paragraph of answer, and entitles the appellee to judgment on the theory upon which the paragraph is based, and which we have discussed.

The jury finds that said Adamson, guardian, paid to his successor, Bodkins, the proceeds of the sale of said real estate, being $4,154.19; that Bodkins made settlement with the appellants in relation thereto, and distributed and paid over to each of them the sum of $1,036.71, making in all $4,154.19; that prior to the settlement and

Wilmore *et al. v.* Stetler.

receipt of the money, and at the time thereof, the appellants and each of them knew their rights in and to said land so sold by said guardian of their mother; that at the same time each of them knew that the money so paid and distributed to them was money derived from the sale of the land; that the purchaser believed the land was being sold and purchased by him in fee; that before the commencement of this suit the appellants knew that the money paid to them was derived from the sale of said land, and with full knowledge of their interests in, and rights to, said lands, they have retained the money, still have it, and have never offered to pay it back, or any part thereof, to the purchaser or his grantee, or either. Some distinction is sought to be made as to the language of the verdict, so as to construe it as not showing but that the heirs may not have known that they were receiving any pay except for their mother's one-third. The verdict will not bear the construction contended for by appellants' counsel. It is further contended that as one of the heirs died after the sale, and before the settlement, as to appellants' interest in the share of the deceased heir a different rule applies. We do not think so. The appellants received all of the purchase-money, both the amount received for sale of their own interests and that of the interest of the deceased heir, and they affirmed the sale as well in so far as it relates to the share derived from the other heir as that portion derived from their father.

There is no error in the record.

Judgment affirmed.

Filed May 18, 1893.

## On Petition for a Rehearing.

Dailey, J.—Counsel very earnestly petition for a rehearing in this case, and present two able briefs in which

they criticise the opinion of the court for holding that the appellants ratified the guardian's sale of the real estate in litigation and estopped themselves from recovering in this proceeding by accepting and retaining the proceeds derived from the sale after they became adults. From the facts shown by the record, it is evident that the appellants had known, for years prior to the settlement with their guardian, that Edwards, and those claiming under him, as grantees, had been occupying the premises as their own under color of title created by the guardian's deed and subsequent conveyances. They knew the value of the land and the amount paid for it by Edwards. They also knew that, besides the mother's interest in the 200 acres in question, she had no real estate except a small piece in Randolph county, inherited from her father, the income of which was $15 per year, that belonged to her at the time of her death.

With a full knowledge of these facts and their rights, they settled with their guardian, in relation thereto, and received from him, in full of the proceeds of the real estate they seek to recover and interest thereon, the sum of $4,146.84. Did, then, the acceptance of the purchase-money, knowing it was the price paid for their land at its full value, confirm the sale and estop the appellants, while retaining it, to assert the right to the land? It is an old proverb that "you can not eat your cake and have it, too."

Equity will no more allow the appellants to retain the proceeds of the sale with such knowledge, and claim the land also, than it would allow them with like knowledge, to claim the land and accept the proceeds. They should, if they desired to claim the land, have tendered back to the purchaser, the accepted purchase-money as soon as they knew the facts. Men are bound by principles of

common honesty in business transactions, and such laws of conduct are vindicated and sanctioned by the courts.

In *Deford* v. *Mercer*, 24 Iowa, 118, the court assumed that a sale made by a guardian was void, but found that before the plaintiffs had instituted their suit to recover the land sold by their guardian, they had received from him the purchase-money for it, and were estopped to claim the tract.

The court said: "If there is anything well founded in conscience or in law, it is that they are estopped in equity from claiming the land after having voluntarily accepted the money which arose from or was the product of the sale of the land." *France* v. *Haynes*, 67 Iowa, 139.

It is the law of other courts as well, that one who, with knowledge, accepts the proceeds of an unauthorized sale of his property is estopped to dispute the validity of the sale. *Schenck* v. *Sautter*, 73 Mo. 46; *Moore* v. *Hill*, 85 N. C. 218; *Field* v. *Doyon*, 64 Wis. 560; *Booth* v. *Wiley*, 102 Ill. 84.

In *Hoffmire* v. *Holcomb*, 17 Kan. 378, the court held that where a mortgagor accepted the surplus of the proceeds arising from the sale of the mortgaged premises in a foreclosure proceeding, he was estopped to question the validity of the sale or to recover the land sold. In this connection we cite *Walling* v. *Burgess*, 122 Ind. 299.

In *Goodman* v. *Winter*, 64 Ala. 410 (436 and 437), the tenant for life was the mother of the remaindermen, and the sale and conveyance was made by her and her husband, the father, the natural guardian of the remaindermen.

The court said: "The wrongful alienation by the tenant for life, while incapable of operating to their injury, clothed them with these several distinct, conflicting rights. If they accepted the investment made by the life tenant, or claimed a lien on the premises conveyed, for the pur-

chase-money the life tenant had received and invested, the wrongful alienation was ratified and confirmed. During infancy the remainder-men were thus clothed with inconsistent and conflicting rights, between which they were incapable of electing, and yet having the right of electing when they attained majority. While an infant can not make an election, a court of equity has undoubted jurisdiction to make an election for him.     1 Lead. Cases Eq. (Part 2), 1169.

"It is also true, that an infant may not create an estoppel; yet, under circumstances, the benefits of a particular transaction may have been so appropriated to his advantage, that he will not be heard to gainsay it. A sale of lands, descended to him, may have been made under an order of court *void for want* of jurisdiction; the purchaser can not repudiate his contract to pay the purchase-money, unless the infant is brought before a court of equity, and an election made for him whether the sale shall be confirmed or repudiated. *Lamkin* v. *Reese*, 7 Ala. 170; *Bland* v. *Bowie*, 53 Ala. 153; *McCully* v. *Chapman*, 58 Ala. 325; *Merritt* v. *Horne*, 5 Ohio St. 307.

"No adult, infant, lunatic, or married woman, can be permitted to receive, hold, and enjoy the proceeds of a sale of property, whether the sale is by an order of a court, irregular and void, or by the wrongful act of an individual, without being estopped from a repudiation of the sale.

"In *Commonwealth* v. *Sherman*, 18 Pa. St. 346, it is said, 'Equitable estoppels of this character apply to infants, as well as adults; to insolvent trustees and guardians, as well as persons acting for themselves; and have place, as well when the proceeds received arise from a sale by authority of law, as where they spring from the act of the party.'

"Of course, it must appear that the sale is for the

Wilmore *et al. v.* Stetler.

benefit of the infant, or the court would not prevent him from asserting his title, though it would protect the purchaser by decreeing him a lien or trust for the repayment of such sums as had been applied to the benefit of the infant.''

It is true, the doctrine of *caveat emptor* applies to a purchase at a guardian's sale. But this has nothing to do with what Edwards believed at the time he was buying the land, nor with his actual good faith in making the investment. The guardian who swore that Mrs. Wilmore owned the land in fee was, in a legal sense, presumed to know the will and the interest which the ward took under it, as was the attorney who prepared the petition and the court which ordered the sale. But these are not controlling facts in this case.

Appellee is now better informed than was his grantor at the time he bought, and rests his title upon the facts that his grantor paid to the guardian the full value of the land, and that they accepted the sum so paid when of full age, with knowledge of their rights and the source from which the money paid and accepted was derived. It would be unreasonable to suppose that Edwards, in paying for the land he bought, giving for it $400 more than its appraised value in fee, was acting in bad faith, because the law, for some purposes, would hold him cognizant of facts of which, in truth, he was ignorant. While he was uninformed of the law governing the construction of the testator's will and the extent of the title he acquired by his purchase, he evidently believed he was acquiring a good title to the whole of the tract, as the jury have found by their special verdict.

It is doubtless true, in most instances, that equitable estoppels are usually based upon ''a fraudulent purpose and a fraudulent result,'' and if the element of fraud is wanting, there is no estoppel if both parties were equally

cognizant of the facts and the declarations, or silence produced no change in the conduct of the other, he acting solely upon his own judgment.    But such is not the doctrine of this and kindred cases, because the rule so applied would be inequitable and unjust.    This belongs to the class in which it is held that an estoppel may arise upon matters that transpire after the purchase, and on which the purchaser did not make the investment.

Inasmuch as the judgment in this case rests upon the second paragraph of the answer pleading ratification, it is not necessary we should determine the sufficiency of the fourth and fifth paragraphs, which rely upon the statute of limitation as a defense.

Petition overruled.

