The E. F. Hallack Lumber & Manufacturing Company, Appellant, v. Gray et al., Appellees.

1. Pledgor and Pledgee.

A pledgee may, when not restrained by statute or agreement, sell and transfer his debt against the pledgor, and transfer therewith the collateral held by him to secure its payment to the assignee, but in so doing he must not prejudice the rights of the pledgor, or impair his right to redeem.

2. Same.

The pledgee of commercial paper cannot, except by special agreement, sell the collateral, but must collect it when due, and after applying the proceeds to the satisfaction of his debt and the costs and expenses incurred, pay over the surplus, if any, to the pledgor.

3. Same.

The pledgee is trustee for the pledgor, first to pay the debt, and second to pay over the surplus.   He cannot so deal with the trust property as to destroy or even impair its value.

4. Measure of Damages.

The measure of damages in case of the conversion of a note held as collateral security is, upon the facts in this case, the difference between the face value of the note and the indebtedness of the pledgor at the time of the conversion.

*Appeal from the District Court of Arapahoe County.*

ON the 30th day of March, 1889, Gray Brothers & Company instituted this action in the district court of Arapahoe county to recover from the E. F. Hallack Lumber & Manufacturing Company, a duly organized corporation, damages for the conversion of certain collateral security.

The conceded facts are that on the 1st day of January, 1885,

Gray Brothers & Company executed to the defendant company their certain promissory note for the sum of $2,214.20, payable with interest at the rate of 12 per cent per annum on the first day of May, 1888. On the 27th day of February, 1885, the plaintiffs indorsed and turned over to the defendant company as collateral security for this note a note held by them against the Albuquerque Water Company for $5,441.66, dated September 1, 1884, payable with interest at the rate of 12 per cent per annum on or before the first day of May, 1885, upon which had been indorsed a credit of $900, on November 18, 1884, and the following written agreement:

"DENVER, Colo., February 27, 1885.

"Received of Gray Brothers & Company a note signed by the Albuquerque Water Co., by W. K. S. Wilson, president, and L. A. Grant, secretary, amount of note being $5,441.66, dated September 1, 1884, and due on or before May 1, 1885, bearing interest at 12 per cent per annum, with an indorsement of $900 dated November 18, 1884. The note we hereby turn over to the E. F. Hallack L. & Mfg. Co., as collateral security for a note of $2,214.25 which they hold against us, said note being dated January 1, 1885, and due on or before May 1, 1885, with interest at 12 per cent per annum. It is hereby agreed on the part of the E. F. Hallack L. & Mfg. Co. that the surplus, when collected, after paying the said note of the E. F. Hallack L. & Mfg. Co. is to be paid over to Gray Brothers & Co. We, the E. F. Hallack L. & Mfg. Co., agree to let Gray Brothers & Co. have the first $500 paid on said note, provided they can induce the company to pay that much on said note before it becomes due.

"E. F. HALLACK L. & MFG. CO.,

"By E. F. Hallack, President."

The allegations of the complaint upon which appellants base their cause of action are as follows:

"Plaintiffs further state that they are informed and believe, and therefore allege on information and belief, that said defendant fraudulently confederating and conspiring with the

said Water Company, the makers of said collateral note, to cheat, wrong and defraud the plaintiffs, by effecting a compromise and surrender of said note, for less than its face value, on or about the 1st day of December, 1888, and while the same was in the possession of and held by defendant, as collateral to said note of the plaintiffs, without any notice whatever to plaintiffs, without their knowledge or consent, and notwithstanding said collateral note then amounted, with interest, to the sum of $6,922.98, wrongfully compromised and surrendered said collateral note to the makers thereof, the Albuquerque Water Company aforesaid, or to some one for the use of said company, or to some one for their use for cancellation, for and in consideration of the sum of about $3,100, being less than half the face value of said note and interest, which said sum was then and there paid to and received by said defendant in full for said note, and thereupon said defendant, without any notice whatever to the plaintiffs, wrongfully, and in violation of the rights of plaintiffs in the premises, compromised, sold, surrendered and delivered up said note to said Water Company, to the damage of plaintiffs in the sum of $6,922.98."

The defendants deny these allegations, and aver that they sold the principal note of Gray Brothers & Company for the amount then due thereon to one A. A. Grant, and transferred the note, together with the note of the Albuquerque Water Company, to him as collateral security for the payment of the principal note, as they had a legal right to do; and in no other way have they sold or disposed of said collateral note. To support the issues on their part the plaintiffs introduced the following correspondence:

"Denver, Colo., August 29, 1888.

"MR. C. P. GRAY, San Francisco, Cal.

"*Dear Sir:* At the request of Mr. E. F. Hallack, we write to inform you that nothing has been done by A. A. Grant nor anybody else towards the payment of your note. If you will make an immediate payment of $300 on the note, we are

authorized to give further time and refrain from advertising the collateral. If you are unable to do this by the 10th of September, we shall proceed to sell the collateral and at the same time take such legal proceedings as in our judgment may be necessary to collect the amount of Mr. Hallack's claim.

Very truly yours,

MARKHAM & DILLON."

"Albuquerque, N. M., September 22, 1888.

"THE E. F. HALLACK Lumber & Manufacturing Company, Denver, Colo.

" *Gentlemen:* I am in receipt of a letter from Mr. A. A. Grant, which leads me to believe that I can collect from him, for you, the amount of the claim which you hold against Gray Brothers, if you will turn over to him the note of the Albuquerque Water Company, held by you as security for your claims.

"If you see fit to send these notes to me, with instruction that I may retain five per cent commission as fee for making the collection, I will retain the notes until October 15th, and am pretty much satisfied that I can collect the face of the claim against Gray Brothers, by your assigning the notes which you hold as security. If you have any hesitation about sending the notes to me direct, send them to one of the banks here, with instructions to deliver notes to me on or before October 16th, upon my paying to the bank the face of the claim of yours against Gray Brothers, less my commission of five per cent.

"Also send a detailed statement of the amount of the claim against Gray Brothers. I want this because, if I make arrangements with Mr. Grant, he will want an assignment of your claim against the Water Company. Send the notes endorsed in blank and assignment of your claim against Gray Brothers.

Please answer at once.

Yours very truly,

W. B. CHILDERS."

"Denver, Colo., September 24, 1888.

"W. B. CHILDERS, Albuquerque, N. M.

"*Dear Sir :* Yours of 22nd, in reference to Gray Brothers' and Albuquerque Water Company's notes, is received. In reply, we have advertised the Water Company's note for sale, which comes off on the 29th, and, after that date, should we be the owners of the paper, we will then consider your proposition. Should Mr. Grant desire the paper, he can have it by forwarding the money here to pay our note against Gray Brothers, before the date of the sale.

Yours truly,<br>
E. F. HALLACK, Lumber & Manufacturing Co."

"Albuquerque, N. M., October 15, 1888.

"E. F. HALLACK Lumber & Manufacturing Company, 1825 Holladay street, Denver, Colo.

"*Gentlemen :* In reply to yours of September 24th. Since receiving your letter, I have received one from Mr. Grant from Boston, instructing me to inquire of you what is the least amount that you will take for your claim against Gray Brothers and assign it to him, and also the Water Company, which is held as collateral security to go along with the assignment.

"Telegraph me upon receipt of this letter, what is the lowest price you will take for same, and if we can agree upon price to be paid, forward to either bank in Albuquerque, and the amount will be paid you.

Yours very truly,<br>
W. B. CHILDERS."

"Dated, Denver, Colo., October 18, 1888.

"To W. B. CHILDERS, Albuquerque.

"Will take face of note and interest and turn over collateral. Allow $100, commission.

E. F. HALLACK Lumber & Manufacturing Company."

The principal note and collateral were afterwards and on October 23, 1888, sent to W. S. Strickler, cashier of the Al-

buquerque National Bank, with the following letter of instructions:

"Denver, Colo., October 23, 1888.

" W. S. STRICKLER, ESQ., Cashier, Albuquerque, N. M.

"I enclose for collection and credit when paid—no protest—No. 6713, Gray Brothers & Co., $2,214.30. Interest $1,016.29; collateral note Albuquerque Water Company, $5,441.66, attached. When W. B. Childers pays the note of Gray Brothers & Co., with interest to date of payment, less $100, deliver it to him together with the note of the Albuquerque Water Company. Please notify him.

Respectfully yours,

A. A. DENMAN, Cashier."

The plaintiff also read in evidence the deposition of W. S. Strickler, as follows:

" My name is W. S. Strickler, residence at Albuquerque, N. M., Cashier of Albuquerque National Bank. I am not acquainted with any of the parties to this action. I am acquainted with W. B. Childers. We received the note of Gray Brothers to the defendant company the latter part of October, 1888, for collection, with instructions to deliver same to W. B. Childers on payment of the amount due, less $100. There was a note of the Albuquerque Water Company for $5441.66 attached to the note of Gray Brothers, which we were instructed to deliver to W. B. Childers upon the payment of the note of Gray Brothers above referred to."

And also the deposition of A. A. Grant, which is as follows:

" Name Angus A. Grant; live at Albuquerque, New Mexico. I am acquainted with E. F. Hallack and with Gray Brothers, plaintiffs. I have been president of the Albuquerque Water Company since May, 1886. I have in my possession a certain promissory note for $5,441.66, executed by the Albuquerque Water Company to Gray Brothers, and signed W. E. Wilson president, and L. A. Grant secretary of said company. I received said note in October, 1888. It was bought from E. F. Hallack or the E. F. Hallack Lumber

Company, I don't know which.   I am the owner of the note. I had my attorney buy it with my own money and hold it still, but in the interest of the Water Company.   I have not yet turned it over to the water company, as they are not in shape to settle with me for it.   I came in possession of it by buying Gray Brothers' note, which was held by Hallack, secured by the Water Company note.   By buying the Gray Brothers' note it gave me possession of the Albuquerque Water Company's note.   The consideration was, in round numbers, $3,100, which I paid to the Albuquerque National Bank, where this note had been sent to be delivered to me upon the payment of the money.   I was acting on behalf of the Water Company, but with my own money.   As president of the company I was looking out for the interest of the company. The consideration was, in round numbers, about $3,100—a little over; it was the face of the Gray Brothers' note with interest, less $100 commission.   In consideration of this transaction, Hallack was to turn over to me the Albuquerque Water Company's note in favor of Gray Brothers held by them, which would then become our property.   I have not the note with me.   There was some correspondence with reference to this transaction between W. B. Childers my attorney, and the defendant company.   I have not the correspondence with me, nor under my control.

The collateral note has not been surrendered or given up to the Albuquerque Water Company or to any one for said company.   It is still in my possession.   I hold it by right of purchase from the defendant company, and I am holding it for myself as an individual and as my property.   I hold it against the Albuquerque Water Company until they are able to pay me for it.   Whenever the company is able to take it up and pay me, with interest, I will surrender it to them. I am holding with a view of turning it over to them."

Also the following correspondence:

"Los Angeles, Cal., Dec. 12, 1888.

"To the E. F. HALLACK Lumber & Mfg. Co., Denver, Colo.

"If you will send the note you hold against us to the

Farmers and Merchants Bank at Los Angeles, also the Albuquerque Water Co.'s note, which you hold as collateral, we will pay the amount due you.

"Hoping this will be satisfactory, we remain,

Yours respectfully,

GRAY BROTHERS,
By G. F. GRAY."

"Denver, Colo., Dec. 19, 1888.
"C. F. GRAY, Esq., Los Angeles, Cal.

"*Dear Sir:*—Yours of the 13th at hand, and in reply we have received payment of your note some time ago through W. B. Childers, of Albuquerque.

"With thanks, we are,

Respectfully yours,

E. F. HALLACK, L. & M. Co.,
Per C. E. MARVIN, Treas."

The defendant offered in evidence the following letter :

"Denver, Colo., October 22, 1888.
"A. A. DENMAN, Cashier :

"Please forward to your correspondent at Albuquerque, N. M., for collection, the enclosed note of Gray Brothers & Co., payable to our order, dated January 1, 1885, interest at 12 per cent from date until paid.  Please have your correspondent notify W. B. Childers, who will pay the above, less $100 commission.  The attached note of the Albuquerque Water Company for $5,441.66 is held as collateral security, which have delivered to Mr. Childers when Gray Bros.' note is paid.

The E. F. HALLACK L. & M. Co.,
Per C. E. MARVIN, Treas.

"Entered for coll. October 23, 1888."

C. E. Marvin testified that he was the cashier of the defendant company ; that he sent the foregoing letter to A. A. Denman, cashier of the Denver National Bank.  " * * * I never gave any other instructions to the Denver National

Bank or its cashier, other or different from that mentioned in that letter."

E. F. Hallack was sworn as a witness in behalf of the company, and testified as follows :

" Name, E. F. Hallack.  I have been president of the defendant company since its organization.  I was so acting at the time the matter in controversy took place.  We have several times demanded payment of their note from Gray Brothers.  At the time I took Gray Brothers' note, or about that time, they also gave a collateral note, being a note of the Albuquerque Water Company, as collateral security for their debt.  I think the Albuquerque Water Company's note was sent to the bank at Albuquerque, to see if it could be collected.  It was finally sent to Mr. Childers at Albuquerque, in connection with Gray Brothers' note.  We received a letter from Mr. Childers, asking a proposition for the Gray Brothers' note.  Then I made a proposition to Mr. Childers, telling him what I would take for the Gray Brothers' note.  This proposition was accepted by Mr. Childers, and the two notes were forwarded in accordance with the proposition, and with the instructions that have been read here in evidence.  We never have given any other or different instructions to the Denver National Bank, or to Mr. Childers, or to the Albuquerque National Bank, other than those contained in exhibit 10.  We have not made any disposition of the collateral note other than the transaction mentioned in this letter."

On cross-examination he said :

" I do not know A. A. Grant.  Never saw him.  I did not know of Mr. Grant as president of the Albuquerque Water Company in September, 1888.  I might have had some information from Gray Brothers or some other source that Grant was president of the company, but I have no recollection of it.  I do not recollect whether Mr. Grant's name appeared on the collateral note or not."

" We understood that Grant was in some way connected

with the Albuquerque Water Company, either president or secretary, to the best of my recollection."

The jury found the issues joined in favor of the plaintiffs, and assessed their damages at the full amount of the collateral note. Judgment was rendered on the verdict for the sum of $6,889.35. The defendant brings the case here on appeal.

Messrs. Rogers & Cuthbert, Mr. D. B. Ellis and Mr. R. H. Smith, for appellant.

Messrs. Lipscomb & Hodges, for appellees.

Mr. Justice Goddard delivered the opinion of the court.

We have fully set out the evidence introduced on the trial of this cause in the court below, because the principal contention of appellant is that the verdict of the jury is not sustained thereby. In other words, it is insisted that the evidence discloses a legitimate transfer of the collateral in question to A. A. Grant, and does not justify the conclusion that it was surrendered to the Water Company. We think, when tested by the well settled rules fixing the rights and duties of a pledgee of collateral security, the facts disclose a transaction that, under the circumstances, constitutes a conversion of the collateral in question. While it is well settled that a pledgee may, when not restrained by statute or agreement, sell and transfer his debt against the pledgor, and transfer therewith the collateral held by him to secure its payment to the assignee, yet he must act fairly, and in doing so must not prejudice the rights of the pledgor or impair his right to redeem upon payment of the original debt. He cannot, except by special agreement, sell the collateral either at public or private sale, but must collect it when due, and, after applying the proceeds to the satisfaction of his debt and the costs and expenses incurred, pay over the surplus, if

any, to the pledgor.   *Joliet Iron Company v. Sciota Fire Brick Company*, 82 Ill. 548 ;  *Zimpleman v. Veeder*, 98 Ill. 613.

Neither can he, except in very extreme cases, compromise with the maker of the collateral and surrender the same for less than the amount due thereon.   If he does so, he will be compelled to account to the pledgor for its full value.   *Union Trust Co. v. Rigdon*, 93 Ill. 458;  *Depuy v. Clark*, 12 Ind. 427.

As was said in the case of  *Wheeler v. Newbould*, 16 N. Y. at page 398 :  " His character is that of trustee for the pledgor, first, to pay the debt, and second, to pay over the surplus, and he cannot so deal with the trust property as to destroy or even impair its value."

Looking not only to the form of this transaction, but as well at the substance, considering the relation of Grant to the Water Company and the knowledge that Hallack had of his connection therewith, the conclusion is irresistible that the collateral in question was, to all intents and purposes, surrendered to the Water Company.   That it was the purpose of Grant to obtain it for the company is evident from his testimony.   He says :

" I have been president of the Albuquerque Water Company since May, 1886.   I have in my possession a certain promissory note for $5,441.66 executed by the Albequerque Water Company to Gray Brothers. * * * I received said note in October, 1888.   It was bought from E. F. Hallack or the E. F. Hallack Lumber Company, I do not know which. I am the owner of the note.   I had my attorney buy it with my own money, and hold it still, but in the interest of the Water Company.   I have not yet turned it over to the Water Company, as they are not in shape to settle with me for it. * * * I was acting on behalf of the Water Company, but with my own money ; as president of the company I was looking out for the interests of the company.   The consideration was, in round numbers, about $3,100, a little over.   It was the face of the Gray Brothers' note with interest, less $100 commission.   I hold it against the Albuquerque Water

Company until they are able to pay me for it. Whenever the company is able to take it up and pay me, with interest, I will surrender it to them. I am holding with a view of turning it over to them."

It is also evident, from the testimony of Hallack, the president of the defendant company, that he knew he was dealing with an officer of the Water Company, and made the sale and transfer with knowledge that he was virtually placing the collateral in the hands of the maker, or, at least, in the hands of a party whose purpose was to relieve the maker from its payment and enable it to cancel and discharge it for a sum less than its face value, to the prejudice of the pledgors. Such a transaction cannot be sustained. But it is insisted that, notwithstanding such a transfer of collateral security may be wrongful, still the appellees cannot maintain this action until they have made a tender of the amount of their debt and demanded a return of the collateral. Under the facts of this case no tender was necessary. The appellant has realized the amount of its claim against them, and therefore a tender of the amount would be a useless ceremony. *Fletcher v. Dickinson*, 7 Allen, 23.

We think, upon the facts disclosed in this record, the appellees can maintain the action, and the measure of their recovery should be the difference between the face value of the collateral note and their indebtedness to appellant at the time of its conversion. *Fletcher v. Dickinson, supra; Garlick v. James*, 12 Johns. 145 ; *Fowler v. Gilman*, 13 Met. 267 ; *Shaw v. Ferguson*, 78 Ind. 547 ; *Work v. Bennett*, 70 Pa. St. 484 ; *The Baltimore Marine Ins. Co. v. Dalrymple et al.*, 25 Md. 269 ; *Brierly v. Kendall et al.*, 79 Eng. C. L. 937 ; *First Nat. Bank of Louisville v. Boyce*, 78 Ky. 42 ; *Baker v. Drake*, 53 N. Y. 211.

Appellees contend that the measure of damages should be the full amount of the collateral note, because it does not appear that they are relieved from the payment of their original note ; and for the further reason that appellant, having insisted that there was no conversion, it has " cut itself off

from this defense." Neither of these positions is tenable. The note of Gray Brothers & Company was, at the time of its sale, long past due, and was purchased by Grant with full knowledge of the fact that it was secured and its payment provided for out of the collateral. Being past due paper, a purchaser from him would take it subject to the same equities. The right to have the amount of the original note deducted from the value of the collateral is not a matter of defense. Whatever the form of action, whether in contract or tort, the party injured is entitled to recover an adequate indemnity for the loss suffered. The interest of Gray Brothers & Company in the converted collateral was the balance due thereon after deducting the amount of their indebtedness to appellant. The loss of this sum is the injury they have suffered through the delict of the appellant, and a recovery of this sum is the relief to which they are entitled, and is an essential element of, and must affirmatively appear from, a statement of their cause of action ; and the fact that appellant relied on a denial of their right to recover at all could not enhance the measure of this relief.

We find no error in the giving or refusing instructions. While some of those refused correctly state the law, they are fully covered by the instructions given, and, as a whole, the instructions given fully and correctly state the law of the case. The assignments of error based upon the admission of evidence are, we think, without merit; in view of all the circumstances of the case, the evidence complained of was relevant, and tended to throw light upon the real nature of the final transaction. The case was fairly submitted to the jury upon both the facts and the law, and the only error that intervened upon the trial in the court below was in the assessment of the amount of damages.

The amount for which judgment should have been rendered is easily ascertainable by mathematical calculation. The amount is arrived at by deducting the amount due on the principal note from the amount of principal and interest

due on the Water Company's note at the date of transfer. The judgment will therefore be reversed, with direction to the court below to enter judgment accordingly.

*Reversed.*