SUSAN D. BRIGHTSON, Appellant, *v.* JOHN CLAFLIN, Respondent.

Pledgor and pledgee — conversion — stock pledged to secure payment therefor — when dividends declared on stock are cash and should be applied on the indebtedness — sale of pledged stock with accumulated dividends thereon unlawful — rights and remedies of pledgor.

1. Under ordinary circumstances it is the right of a pledgee of stock to collect dividends declared thereon and it is his duty to apply them to the reduction of the indebtedness for which the stock is held

as security. He represents not only his own interests as pledgee but also holds a duty to the pledgor.

2. Where dividends have been declared on stock but have not yet become payable a proper sale of the stock would necessarily be made with the forthcoming dividend still on it. But where dividends declared have been paid and have passed into the possession of the pledgee they are not a subject of sale.

3. Plaintiff's assignor subscribed for shares of the capital stock of the corporation of which defendant was president. He did not pay for the stock which was issued to him and in his name, but instead gave his notes to the corporation therefor and the stock was left with and held by the corporation as security for the payment of the notes. The corporation declared dividends upon this stock, and these dividends were for a time either paid to plaintiff's assignor or applied on his indebtedness. Thereafter dividends declared on the stock, and which were represented by checks, were placed by the corporation in a special account and the checks held by it without application to such indebtedness until the dividends amounted to a considerable sum. Disagreements having arisen, plaintiff's assignor was discharged from defendant's employ and defendant by a notice signed in the name of the corporation notified the assignor that at a given time and place there would be sold the stock theretofore pledged " together with the rights to uncollected dividends " from a given date. Applying the dividends at their full amount and value the stock was sold for less than it was worth. Plaintiff's rights were based upon an assignment to her by the pledgor subsequent to this sale. *Held*, that the defendant was guilty of conversion. These dividends had been detached from the stock and had become cash or the equivalent of cash which could not lawfully be sold. His misconduct infected the sale of the pledged stock, which under proper conditions might have been sold. Inasmuch as part of the entire transaction was unlawful the whole of it necessarily becomes so. (*Wheeler* v. *Newbould*, 16 N. Y. 392, followed.)

4. Defendant was chargeable with knowledge of the law which condemned the step which he was about to take and the pledgor did no act which enticed him to believe that the act was lawful or that his conduct would be accepted and acquiesced in. Neither was there any such delay of action by the pledgor or the plaintiff as to sustain a conclusion of law that there was acquiescence in what had been done and a waiver of rights which might have existed.

5. The real damages as the case now stands are those which the pledgor suffered by reason of an improper and unlawful sale as the

result of which there was realized a smaller sum than should have been realized for application on his indebtedness or for restoration to him in case there was a surplus over and above the indebtedness.

*Brightson* v. *Claflin*, 173 App. Div. 967, reversed.

(Argued January 21, 1919; decided February 25, 1919.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered May 24, 1916, affirming a judgment in favor of defendant entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Barclay E. V. McCarty* for appellant. The respondent was the author of the auction sale of May 29, 1907; and, consequently, he was liable, personally, in conversion, in respect of any property that was converted by the process of that sale. (*Fishkill Inst.* v. *Bank,* 80 N. Y. 162; *Schultz* v. *U. S. Fidelity Co.,* 201 N. Y. 230; *Russell* v. *McCall,* 141 N. Y. 437; *MacDonnell* v. *Buffalo Co.,* 193 N. Y. 92; *Pease* v. *Smith,* 61 N. Y. 477; *Laverty* v. *Snethen,* 68 N. Y. 522.) The sale of the nineteen uncollected dividends, theretofore due and collectible, was illegal; and, consequently, all those uncollected dividends were converted by the process of that sale. (*Wheeler* v. *Newbould,* 16 N. Y. 392; Jones on Collateral Securities [3d ed.], §§ 651, 661, 692; *Gutman* v. *Schreiber,* 173 App. Div. 670; *Field.* v. *Sibley,* 74 App. Div. 81; *Garlick* v. *James,* 12 Johns. 146; *Union Trust Co.* v. *Ringdon,* 93 Ill. 458; *Fletcher* v. *Dickinson,* 7 Allen [89 Mass.], 23; *Hill* v. *Newichawanick,* 71 N. Y. 593; 8 Hun, 459; *King* v. *Paterson, etc., R. R. Co.,* 29 N. J. L. [5 Dutch.] 504; *Laverty* v. *Snethen,* 68 N. Y. 522; *MacDonnell* v. *Buffalo Co.,* 193 N. Y. 92.) The stock was sold, not separately, but coupled, as one entity, with the nineteen unsalable dividends; and, consequently,

the stock also was converted by the process of that sale. (*Laverty* v. *Snethen*, 68 N. Y. 522.) The plaintiff never lost, by "waiver or acquiescence," any right to object to the auction sale of May 29, 1907; for, on the trial court's findings of fact, five days before that sale took place, she warned the respondent, by written notice, that she declined to recognize the legality of the proposed proceeding. (*Glenn* v. *Garth*, 133 N. Y. 18; *New York Rubber Co.* v. *Rothery*, 107 N. Y. 310; *Muller* v. *Pondir*, 55 N. Y. 325.)

*John L. Wilkie, Arthur F. Gotthold* and *George J. Thomson* for respondent. The sale of the uncollected dividends did not constitute a conversion. (*Willoughby* v. *Comstock*, 3 Hill, 389; *Weir* v. *Dwyer*, 62 Misc. Rep. 7; *Nichols* v. *Eaton*, 26 N. Y. 410; *Milliken* v. *Dehon*, 27 N. Y. 366; *Strong* v. *Nat. M. B. Assn.*, 45 N. Y. 718; *Porter* v. *Parks*, 49 N. Y. 564; *Brooklyn Bank* v. *Barnaby*, 197 N. Y. 210; *Small* v. *Housman*, 208 N. Y. 115; *Barber* v. *Hathaway*, 47 App. Div. 165; *Huggans* v. *Fryer*, 1 Lans. 276; Jones on Collateral Securities [3d ed.], §§ 603, 651; *Chapman* v. *Brooks*, 31 N. Y. 75.) Plaintiff's right to object, if any, has been lost by waiver or acquiescence. (*Brown* v. *Bowen*, 30 N. Y. 519; *McPherson* v. *Rollins*, 107 N. Y. 316; *Erie Co. Savings Bank* v. *Roop*, 48 N. Y. 292; *Garnar* v. *Bird*, 57 Barb. 277; *Krantz Mfg. Co.* v. *Gould Storage B. Co.*, 83 App. Div. 133; *Hogan* v. *City of Brooklyn*, 52 N. Y. 282; *Schanz* v. *Sotscheck*, 167 App. Div. 202; *Manchester* v. *Braedner*, 107 N. Y. 346; *Shoemaker* v. *Benedict*, 11 N. Y. 176; *Brooklyn Bank* v. *Barnaby*, 197 N. Y. 210; *Matter of Kendrick*, 107 N. Y. 104.)

HISCOCK, Ch. J. This action is brought to recover for the alleged conversion, through sale, of certain stocks held as security and of dividends which had been declared thereon. The claim of conversion is predicated on the

theory that the dividends which had been declared were equivalent to so much money and should have been collected and applied on the indebtedness instead of being sold; that inasmuch as the stock and the dividends were sold together the entire transaction was unlawful and there was a conversion of the stock as well as of the dividends. Out of many findings which although unanimously affirmed are frequently disregarded in the argument of the case a comparatively small number of simple and decisive facts may be gathered.

Plaintiff brings this action as the assignee of her husband, one George E. Brightson. Prior to September, 1890, there had been a copartnership under the name of H. B. Claflin & Company. At about the time mentioned as a successor to said copartnership there was organized a corporation known as the H. B. Claflin Company. Brightson, who had been in the employ of the copartnership, continued in the employ of the corporation and was permitted to and did subscribe for 200 shares of the capital stock issued by the latter at the price of $20,000. He did not pay for the stock which was issued to him and in his name, but instead gave his notes to the corporation therefor and the stock was left with and held by the corporation as security for the payment of said notes. The corporation apparently declared regular dividends at the rate of eight per cent per annum upon this stock, and down to 1902 by amicable arrangement these dividends were either paid to Brightson or applied on his indebtedness. In 1902 disagreements arose, Brightson was discharged from the corporation, and thereafter dividends declared on the stock, and which were represented by checks, were placed by the corporation in a special account and the checks held by it without application to Brightson's indebtedness until these dividends amounted to between seven and eight thousand dollars.

474         Brightson v. Claflin.

Defendant was the president of the corporation and in 1907 by a notice signed in the name of the corporation by himself he notified Brightson that at a given time and place there would be sold the stock theretofore pledged " together with the rights to uncollected dividends since October 1st, 1902." Apparently for the reason that there had been some claim by plaintiff of a prior assignment to her by her husband of his stock or rights thereunder, similar notice was also given to her. She responded with a communication in which, without admitting the legality of the notice or the right to sell the stock, she requested certain information. Brightson, without having made any prior communication, attended at the time and place of sale together with a representative of a brokerage house who bid off the stock and uncollected dividends as a single transaction and thereafter " said sale was completed by the delivery by the H. B. Claflin Company of said stock certificates and uncollected dividends," and by inference the proceeds of the sale were applied to the indebtedness against Brightson held by the corporation for which the defendant was acting. The findings do not show any relation between Brightson and the broker and do not indicate that the bid by the latter was through concert of action with the former or for his benefit. They do indicate that applying the dividends at their full amount and value, the stock was sold for less than it was worth.

It is found in respect of both plaintiff and her husband that neither one either at the time of sale or previous thereto protested or asserted " that the method of realizing upon the uncollected dividends by selling a right to them was unauthorized or wrongful," and on these findings the conclusion of law is reached " that the plaintiff by her failure and the failure of her assignor, George E. Brightson, to protest or to assert that the method of realizing upon the uncollected dividends by

selling a right to them was unauthorized or wrongful has lost by waiver or acquiescence the right, if any, to object to said sale of said dividends and of said stock."

Plaintiff's rights are based upon and measured by an assignment to her by her husband subsequent to this sale of all of his claims against the defendant by reason of the alleged conversion of said stock and dividends upon this sale. While there are suggestions of and arguments based upon some supposed assignment by Brightson to his wife prior to said sale, that fact if it existed is not before us by a finding or in any other proper manner.

We think that the defendant was guilty of conversion. If it would have been unlawful for his principal, the pledgee, to do the acts which he did then he was not protected and his conduct was unlawful.

It is well settled that under ordinary circumstances it is the right of a pledgee of stock to collect dividends declared thereon and that it is his duty to apply them to the reduction of the indebtedness for which the stock is held as security. He represents not only his own interests as pledgee but also holds a duty to the pledgor. (*Guaranty Co.* v. *East Rome Town Co.*, 96 Ga. 511, 513; *McAulay* v. *Moody*, 128 Cal. 202; *Maxwell* v. *National Bank*, 70 So. Car. 532; *Reid* v. *Caldwell*, 120 Ga. 718; *Union Trust Co.* v. *Hasseltine*, 200 Mass. 414, 417; *Meredith Vil. Savings Bank* v. *Marshall*, 68 N. H. 417; *Gillet* v. *Bank of America*, 160 N. Y. 549, 560.)

Where a dividend has been declared on stock but has not yet become payable a proper sale of the stock would necessarily be made with the forthcoming dividend still on it. But where dividends declared have been paid and have passed into the possession of the pledgee they are not a subject of sale. These dividends have been detached from the stock and at least under such circum

stances 'as are disclosed in this case have become cash or the equivalent of cash. The dividends which we are considering here were declared by the pledgee itself; they had come off from the stock long before the sale and their complete detachment therefrom and their conversion into cash or the equivalent thereof is sufficiently indicated by the fact that the corporation had issued checks for these dividends and which checks were at the time of the sale in its possession as pledgee. There is no principle of law or common sense which authorizes a pledgee to sell cash at a public auction. It is his duty to apply it to the reduction of the indebtedness as security for which the stock is held off from which the dividends have come. This rule is sufficiently established in this state by the case of *Wheeler* v. *Newbould* (16 N. Y. 392) where it was held that it was the duty of a pledgee to collect notes and mortgages and not sell them at auction. It is true that that action was not one of conversion. It is not accurate to say, as is said, that what was written in respect of the lack of right of a pledgee to sell instruments for the payment of money instead of collecting them, was dictum. That question was one of those directly involved in the case and properly before the court. Its disposition is controlling in this case where the facts are much stronger in favor of the plaintiff. (See, also, *Union Trust Co.* v. *Hasseltine, supra; Hallack L. & M. Co.* v. *Gray,* 19 Colo. 149.)

It being improper and unlawful for the defendant to sell money his misconduct infected the sale of the pledged stock, which under proper conditions might have been sold. The sale which he made was a single, entire one of both stock and dividends. There is no way by which the sale of the two may be separated and inasmuch as part of the entire transaction was unlawful the whole of it necessarily becomes so.

As I stated, it has been held as matter of law " that

plaintiff by her failure and the failure of her assignor to protest or to assert that the method of realizing upon the uncollected dividends by selling the right to them was unauthorized or wrongful has lost by waiver or acquiescence the right, if any, to object to said sale." It has not directly been found as matter of fact that plaintiff through estoppel or through waiver by acquiescence has lost her rights and there are no other findings which in our opinion support this conclusion of law. A consideration of what the plaintiff did is not very material. Her attempt to recover is based upon her rights as a subsequent assignee of her husband. But if her conduct were material it appears that she in substance questioned the right of defendant to make the sale he did. So far as her assignor is concerned it simply appears that after receipt of defendant's notice he made no protest, that he attended the sale (although it does not appear that either directly or through another he made a bid), and that no action was brought by him or upon his rights for three or four years. These facts certainly did not justify the conclusion as matter of law which has been made. We think there was no element of estoppel anywhere present. The defendant was acting in hostility to the assignor. He was proposing, not to act in accordance with the wishes or advice of the assignor, but to enforce the legal rights of his principal. Defendant was chargeable with knowledge of the law which condemned the step that he was about to take and the pledgor did no act which enticed him to believe that the act was lawful or that his conduct would be accepted and acquiesced in. So far as the findings show each party stood on his rights. The plaintiff was under no obligation to speak and there is no chance for the defendant to claim that he has been misled. (*Alsens A. P. C. Works* v. *Degnon Cont. Co.*, 222 N. Y. 34, 37; *Rothschild* v. *Title Guarantee & Trust Co.*, 204 N. Y. 458; *Newhall* v. *Hatch*, 134 Cal. 269, 274;

*Beechley* v. *Beechley*, 134 Ia. 75; *Sheffield Car Co.* v. *Hydraulic Co.*, 171 Mich. 423; *N. Y. Rubber Co.* v. *Rothery*, 107 N. Y. 310; *Shakman* v. *U. S. Credit System Co.*, 92 Wis. 366; *Maple* v. *Kussart*, 53 Penn. St. 348; *Wilmore* v. *Stetler*, 137 Ind. 127; *Baker* v. *Seavey*, 163 Mass. 522; *Barnett* v. *Kamp*, 258 Mo. 139; *Rudd* v. *Matthews*, 79 Ky. 479.)

Neither has there been in our opinion any such delay of action by the pledgor or the plaintiff as to sustain the conclusion as matter of law that there was acquiescence in what had been done and a waiver of rights which might have existed. A failure to act in repudiation of something which has been done may often be evidence of acquiescence and through such delay there may arise under some circumstances such a condition of estoppel as will prevent an injured party from securing relief. It is sufficient to say that in this case we do not find these elements as matter of law at least.

The findings contain some evidence that if the dividends had been properly applied to the payment of Brightson's indebtedness and the stock sold there would have been realized several thousand dollars more than was realized by the proceedings which were indulged in, and, therefore, there should be a new trial. This being so we think that we should indicate to some extent the rule of damages which should be followed and our entire dissent from the one which plaintiff is urging.

It is insisted that plaintiff should be allowed to recover as damages the entire and aggregate amount made up of dividends and of the value of the stock without any reference to the indebtedness for which the stock was held. This, in our opinion, would be a most unreasonable and unjust conclusion. The stock and dividends were held as security by the Claflin Company for a debt which was unpaid and unquestioned. If plaintiff had sued it for the alleged conversion there is no question

that in proving her damages she would have been com-
pelled to make allowance for the indebtedness which was
a claim upon the stock and payable out of the proceeds
of the sale. (*Baker* v. *Drake*, 53 N. Y. 211, 220; *Hancock*
v. *Franklin Ins. Co.*, 114 Mass. 155; *Garlick* v. *James*,
12 Johns. 146; *Baltimore Marine Ins. Co.* v. *Dalrymple*,
25 Md. 269; *Shaw* v. *Ferguson*, 78 Ind. 547; *Work* v.
*Bennett*, 70 Penn. St. 484; *Hallack L. & M. Co.* v. *Gray*,
19 Colo. 149.)

We do not doubt that the same rule in this respect
which would have been applied for the benefit of the
pledgee is applicable for the benefit of defendant who
was acting for it and in its behalf. It is to be inferred
from the findings that the proceeds of the sale were
applied to the reduction of Brightson's indebtedness.
The corporation would have been entitled to apply to
the indebtedness held by it the proceeds of the sale and
to have this taken into account in determining the
amount of damages suffered by the wrongful conduct
of the sale. When it acted through the defendant, its
agent and representative and the proceeds were so applied,
we feel clear that this reduction with the proceeds of the
pledgor's indebtedness must be taken into account in
estimating plaintiff's damages. The real damages as the
case now stands are those which the pledgor suffered
by reason of an improper and unlawful sale as the result
of which there was realized a smaller sum than should
have been realized for application on his indebtedness or
for restoration to him in case there was a surplus over
and above the indebtedness.

While that question is not now before us and we do
not intend to decide it finally we have doubts whether it
was necessary for the defendant to set up these facts by
way of answer. If they were inherent in the evidence
which plaintiff would be compelled to give to prove her
damages it would hardly seem to be necessary to set

them up. We leave that question for further considera-
tion, if necessary.

The judgments should be reversed and a new trial
granted, with costs to abide the event.

CHASE, COLLIN, CUDDEBACK, HOGAN, MCLAUGHLIN
and CRANE, JJ., concur.

Judgments reversed, etc.